Docket No. 13-55737

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VU NGUYEN,

*Plaintiff - Appellant,*

v.

AURORA LOAN SERVICES,

*Defendant - Appellee.*

## APPELLANT'S OPENING BRIEF

APPEAL FROM THE U.S. DISTRICT COURT
For the Central District of California, Los Angeles
Case No. EDCV 12-00098-GW (DTBx) The Honorable George Wu, Presiding

Lenore L. Albert, Esq. SBN 210876
Law Offices of Lenore Albert
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Ph: 714-372-2264  Fx: 419-831-3376
Email: lenalbert@interactivecounsel.com
*Counsel for Plaintiff – Appellant, Vu Nguyen*

# TABLE OF CONTENTS

I.      JURISDICTION ...................................................................................1

II.     STATEMENT OF KEY ISSUES ON APPEAL ........................................1

III.    STATEMENT OF THE CASE .................................................................2

IV.     SUMMARY OF ARGUMENT .................................................................5

V.      ARGUMENT..........................................................................................9

      A. Standard of Review.........................................................................9

      B. The Claim Based on Breach of Good Faith and Fair Dealing
         Was Improperly Dismissed ...........................................................10

      C. 15 USC §1639(f) Was Erroneously Dismissed ..............................13

      D. The Court Erred in Dismissing the UCL Claim Based on
         Preemption...................................................................................16

      E. Aurora Did Not Plead Preemption As an Affirmative Defense
         So Summary Judgment Was Inappropriate .....................................18

      F. The Dodd-Frank Act Applied to this Action Because it was
         Commenced after July 21, 2011 ....................................................19

      G. The Court Erroneously Used the Field Preemption Standard
         Instead of Conflict Preemption Standard..........................................20

      H. The Court Needed to Come To the Conclusion that Cal Bus &
         Prof Code §17200 Prevents or Significantly Interferes with
         HOLA .........................................................................................21

      I. The Legislature Has Left Preemption Determinations Up to the
        CFPB .........................................................................................31

      J. The UCL Does Not Conflict with HOLA so there is No
        Preemption Under the Barnett Standard ...........................................33

1.  A Genuine Issue of Material Fact Exists re: Suspense Account ...................................................35

2.  A Genuine Issue of Material Fact Exists re: MERS................43

3.  A Genuine Issue of Material Fact Exists re: Recording the "Corporate" Assignment of Deed of Trust in Order to Conclude a Nonjudicial Foreclosure .......................................53

4.  A Genuine Issue of Material Fact Exists re: Foreclosing While Holding the Borrower's Payments in a Suspense Fund Instead of Applying them to His Loan .........................56

5.  Injury In Fact and Causation Exists.......................................56

K.  Breach of Contract/Promissory Estoppel..........................................57

L.  Leave to Amend Should Have Been Granted ...................................59

M. Costs Should Be Awarded ...............................................................60

VI.  Conclusion........................................................................................60

VII.  Statement of Related Cases ..............................................................61

VIII.  Certificate of Compliance ...............................................................62

IX.  Certificate of Service ......................................................................63

# TABLE OF AUTHORITIES

## Supreme Court Opinions

*Barnett Bank of Marion County, N.A. v. Nelson* (1996)
517 U.S. 25 ........................................................................ 18, 22, 33, 34

Carter v. Deutsche Bank National Trust Co., No. C09-
3033, 2010 WL 424477 (N.D. Cal. Jan. 27, 2010) .................................. 46

*Fidelity Fed. Savings & Loan Association v. De la
Cuesta* (1982) 458 U.S. 141 ....................................................... 29

*Florida Lime & Avocado Growers, Inc. v. Paul* (1963)
373 U.S. 132 [10 L.Ed.2d 248, 83 S.Ct. 1210] ......................................... 22

*Hines v. Davidowitz* (1941) 312 U.S. 52 [85 L.Ed. 581,
61 S.Ct. 399] ........................................................................ 22

*Rice v. Norman Williams Co.* (1982) 458 U.S. 654 [73
L.Ed.2d 1042, 102 S.Ct. 3294] ...................................................... 22

*Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218 ................................... 25, 33

## Ninth Circuit Opinions

*Balint v. Carson City* (9th Cir. 1999) 180 F.3d 1047 ......................................... 10

*Biggins v. Wells Fargo & Co.* (N.D.Cal. 2009) 266
F.R.D. 399 ........................................................................... 21

*Bledea v. Indymac Fed. Bank* (E.D.Cal. Feb. 25, 2010),
No. CIV S-09-1239, 2010 WL 715255 ................................................ 46

*Champlaie v. BAC Home Loan Servicing, LP* (E.D.Cal.
Oct. 22, 2009), Civil No. S-09-1316, 2009 WL
3429622 ............................................................................ 46

Corvello v Wells Fargo 2013 U.S. App. LEXIS 16415
(9th Cir. 2013) ................................................................... 10, 59

*Ellsworth v. U.S. Bank, N.A.* (N.D.Cal. Dec. 11, 2012)
2012 U.S. Dist. LEXIS 176277 ...................................................... 20

*Harris v. Amgen, Inc.* (9th Cir. 2009) 573 F.3d 728 ......................................... 10

*Lucia v. Wells Fargo Bank, N.A.* (N.D.Cal. Apr. 22,
2011) 798 F.Supp.2d 1059 .......................................................... 26

*Martinez v. Wells Fargo Home Mortg., Inc.* (9th Cir.
2010) 598 F.3d 549 .............................................................. 23, 26

iv

Munoz v Fin Freedom Senior Funding Corp. 567 F.
  Supp. 1156 (CD Cal 2008) ........................................... 21

Nw. Envtl. Def. Ctr. v. Brown, 640 F.3d 1063, 1069 (9th
  Cir. 2011) ...................................................................... 9

*Olsen v. Idaho State Bd. of Medicine* (9th Cir. 2004) 363
  F.3d 916 ....................................................................... 10

*Romero v. Countrywide Bank, N.A.* (N.D.Cal. 2010) 740
  F.Supp.2d 1129 ........................................................... 31

*Serra v. Lappin* (9th Cir. 2010) 600 F.3d 1191 .............. 10

*Silvas v. E*Trade Mortg. Corp.* (9th Cir. 2008) 514 F.3d
  1001 ....................................................................... 21, 31

*Simo v. Union of Needletrades* (9th Cir. 2003) 322 F.3d
  602 ................................................................................ 9

*Szajer v. City of Los Angeles* (9th Cir. 2011) 632 F.3d
  607 ................................................................................ 9

*Universal Health Servs. v. Thompson* (9th Cir. 2004) 363
  F.3d 1013 ...................................................................... 9

*Workman v. GMAC Mortg. LLC* (Bankr.D.S.C. Nov. 21,
  2007) 2007 Bankr. LEXIS 3887 ................................. 35


**First Circuit Opinions**

*Islam v. Option One Mortgage Corp.* (D.Mass. 2006) 432
  F.Supp.2d 181 ............................................................. 36

**Second Circuit Opinions**

*In re Gorshstein* (S.D.N.Y. 2002) 285 B.R. 118 ................ 36

**Fifth Circuit Opinions**

*Ronemus v. FTB Mortgage Servs.* (Bankr.N.D.Tex. 1996)
  201 B.R. 458 ............................................................... 36

**Eleventh Circuit Opinions**

*Rawlings v. Dovenmuehle Mortgage Inc.* (M.D.Ala.
  1999) 64 F.Supp.2d 1156 ........................................... 36

**Federal Circuit Opinions**

*Demko v. United States* (Fed.Cir. 2000) 216 F.3d 1049 ..................................... 20

**United States Code**

12 U.S.C. § 2617 ...................................................................... 56

15 U.S.C. § 1610(b) ................................................................ 31

15 U.S.C. § 1639f .................................................................... 23

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1332 ........................................................................ 1

**California State Opinions**

*California Viking Sprinkler Co. v. Pacific Indem. Co.*
(1963) 213 Cal.App.2d 844 ................................................... 48

*Camacho v. Auto. Club of S. Cal.* (2006) 142 Cal.App.4th
1394 ........................................................................................ 43

Colgan v. Leatherman Tool Group, Inc. 135 Cal.App.4th
663 (2006) ............................................................................. 42

*Gibson v. World Savings & Loan Assn.* (2002) 103
Cal.App.4th 1291 .................................................................. 35

*Glaski v. Bank of America* (Cal.Ct.App. July 31, 2013)
2013 Cal. App. LEXIS 633 ................................................... 46

*Lavine v. Jessup* (1959) 175 Cal.App.2d 136 ................................... 60

*Lueras v. BAC Home Loans Servicing, LP* (2013) 221
Cal.App.4th 49 ............................................... 10, 11, 12, 13, 59

*Mabry v. Superior Court (Aurora Loan Services)* (2010)
185 Cal.App.4th 208 ............................................................ 24

*McKell v. Washington Mutual, Inc.* (2006) 142
Cal.App.4th 1457 .................................................... 24, 34, 35

*Medrazo v. Honda of North Hollywood* (2012) 205
Cal.App.4th 1 ............................................................... 40, 42

*Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698 ........................... 48

*Poseidon Dev., Inc. v. Woodland Lane Estates, L.L.C.*
(2007) 152 Cal.App.4th 1106 ............................................. 56

*Rose v Bank of America, N.A.*, 57 Cal. 4th 390 (2013) ........................ 25

*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144 ........................................... 46

*West v. JPMorgan Chase Bank, N.A.* (2013) 214
    Cal.App.4th 780 ...................................................................... 10, 58

*Zhang v Superior Court* 57 Cal 4th 364 (2013) .....................................24

**Rules**

Fed. Rules App.Proc., rule 32(a)(7)(B)(iii) ....................................... 62

Fed. Rules Civ.Proc., rule 32(a)(5) ................................................. 62

**Other**

12 C.F.R. § 34.4(b) ................................................................ 26

12 C.F.R. § 560.1 (2012) ........................................................... 30

12 C.F.R. § 560.2 ................................................................. 22

12 C.F.R. §560.2(c) ............................................................... 35

12 U.S.C. §1462a(f) ............................................................... 35

12 USC § 5553 ..................................................................... 20

15 USC §1639(f) ......................................................... 2, 5, 13, 14, 15, 31

61 C.F.R. 50951 ................................................................. 31, 34

61 Fed Reg. 50966 (Sept. 30, 1996) ................................................ 33

Federal Register, OTS Reg. 1996 WL 767462 ........................................ 34

Cal Bus & Prof Code §17200 .............................. 1, 7, 8, 22, 30, 34, 35, 42, 50, 51

Cal Civ. Code, § 1643 ............................................................. 58

Cal Civ. Code, § 2298 ............................................................. 48

Civ. Code, § 2924a(1) ......................................................... 47, 56

Cal Corp. Code §§ 2105 ............................................................ 45

Cal Govt Code §8214.2 ............................................................. 51

Cal Penal Code §115 ........................................................... 47, 50

Cal Penal Code §132 ...............................................................47

Cal Penal Code §186.2 ............................................................. 47

Cal Penal Code §470 ........................................................... 47, 50

Cal Penal Code §529 .............................................................. 47

# I.     JURISDICTION

The district court had jurisdiction over this matter by way of removal based on diversity under 28 United States Code section 1332.

This court has jurisdiction under 28 United States Code section 1291 to review a final order of dismissal.

Judgment was taken against plaintiff/appellant after an order granting defendants' motion for summary judgment was filed and served on April 11, 2013 (Docket No. 105).  This followed an order granting defendants' partial summary judgment on November 5, 2012 (Docket No. 44) on the same motion; and an order granting defendants' motion to dismiss filed and served on September 17, 2010 (Docket Nos. 35 and 36).

A timely appeal was noticed on May 1, 2013. (EOR1-7)

# II.     STATEMENT OF KEY ISSUES ON APPEAL

1.  Whether the Unfair Competition Law  ("UCL") claim pursuant to California Business & Professions Code §17200 was preempted under HOLA after July 11, 2011 on the grounds Aurora Loan Services was a federal thrift when Mr. Nguyen obtained his loan from a nonparty lender?

2.  Whether the trial court erred in dismissing the claims for Second amended complaint without granting leave to amend.

3.   Whether the court erred in dismissing the claim for violation of 15 USC §1639(f) by way of summary judgment.

## III.   STATEMENT OF THE CASE

On July 11, 2012 California passed and the Governor signed Senate Bill 900 into law. The bill was enacted because "38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace…And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California." The California Legislature declared that "[i]t is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options." Senate Bill 900 Preamble.

To combat the rising rates of foreclosures, the U.S. Department of the Treasury directed the large national bank servicers, like defendant, to take corrective action by providing loan modifications that produced more sustainable loan payments. This was mainly achieved through a federal program that rolled out in March 2009 called "HAMP" or the Making Home Affordable Act.

2

Nguyen requested a modification from Aurora, the loan servicer, in 2009-2010. Aurora offered Mr. Nguyen a Workout Agreement. [SAC ¶41-43]  Mr. Nguyen made all of his payments and supplied all requested information, and then Aurora failed and refused to provide the "long term solution" as promised. Instead, they foreclosed. [SAC ¶46]  Mr. Nguyen then sought legal help.  He filed suit and his application for modification was being considered by Aurora when the home unexpectedly sold. [SAC ¶96]  Mr. Nguyen and his attorney were in contact with Aurora and at no time were they told orally or in writing that Mr. Nguyen was not eligible for a modification or that Aurora was proceeding to sale, but they went ahead and sold it while in the midst of their modification review. [RJN original case] (EOR 3:355, 365)

While Nguyen *was left in limbo* and instructed to stop making payments, while the loan modification was being processed, his principal on his negative amortization loan kept getting larger.  This was putting Nguyen further into debt beyond his mere monthly mortgage payments. Time was of the essence in processing his loan modification application after he entered the Forbearance agreement. Yet, Aurora delayed processing the modification application for over one *and one-half years*. (EOR 3: 363-65)

Mr. Nguyen lost the opportunity to cure the arrearage, short-sell, seek Chapter 13 protection, or seek a deed in lieu of foreclosure.  [SAC ¶97]  Plaintiff

3

alleged, Defendants orally promised that he was being considered for a loan modification and then wrongfully sold his home at foreclosure auction anyway, giving Mr. Nguyen no notice before the sale occurred. [SAC ¶60-65] (EOR 3:358-59)

Mr. Nguyen previously sought bankruptcy after obtaining a prior permanent modification of his loan that he wanted to keep. However, based on the bank's false promises and delay Nguyen lost the opportunity to modify his loan after the bankruptcy discharged when it was affordable to do so or file under Chapter 13 which would have forced Aurora to accept modified payments that cured the arrearage. [SAC ¶31-40, 47] (EOR 3:354-56)

On July 11, 2011 the Office of Thrift Supervision was integrated into the Office of Comptroller of Currency. Prior to that time, federal savings associations enjoyed preemptive rights by using the Home Owners Loan Act of 1933 ("HOLA") as a shield. (EOR 2:52-79)

Mr. Nguyen sued in federal court, Case No. 2:11-cv-05378-JVS (RNBx). The court dismissed the case for lack of federal subject matter jurisdiction on September 29, 2011.   Aurora foreclosed on or about October 17, 2011. Mr. Nguyen re-filed his case in state court. Aurora removed the case to federal court and evicted plaintiff in state court. The case was assigned to Riverside upon removal, and then reassigned to Los Angeles. (EOR 3:390)

4

Mr. Nguyen sued for damages for the fraudulent foreclosure. He sought damages from ALS on the grounds that ALS lulled Mr. Nguyen into inaction while he was facing imminent foreclosure by orally promising that he was being considered for a loan modification and on those grounds, his home would not be sold at foreclosure.  ALS took almost one and one-half years to put Mr. Nguyen through their modification process. By delaying the process, ALS made Mr. Nguyen' responsible for ALS's consequence. [SAC ¶95-96] (EOR 3:365)

Defendant moved to dismiss the Second Amended Complaint, plaintiff opposed, and the court denied in part and granted in part without leave to amend on September 17, 2012. The court denied Mr. Nguyen's claim for breach of good faith and fair dealing without leave to amend.  The only claims that survived were (1) 15 USC §1639(f) violation; and (2) the UCL claim. (EOR 1:38-47)

On October 8, 2012 defendant moved for summary judgment which boiled down to two legal arguments: (1) 15 USC §1639(f) was not operative so no claim could be based on the statute; and (2) the UCL claims were preempted by HOLA.

Partial judgment was taken on or about November 5, 2012.  The court eventually granted judgment and dismissed the entire case on April 8, 2013. So plaintiff timely appealed on May 1, 2013.  (EOR 1:3-37)

## IV.    SUMMARY OF ARGUMENT

The district court dismissed this case after erroneously finding that plaintiffs' UCL claims were preempted under the Home Owners Loan Act of 1933 ("HOLA"). Homeowner's rights have become a primary national and state concern.  On July 11, 2011, the federal government eliminated the Office of Thrift Supervision and integrated the monitoring of federal savings associations with the Office of Comptroller of Currency ("OCC") as a part of the series of changes being made to further protect consumers through enactment of the Dodd-Frank Act.

A new panel of oversight was formed, called the Consumer Financial Protection Bureau ("CFPB"). (EOR 2:79-158)

Prior to the integration, the OTS used field preemption with HOLA whereas the OCC which oversaw federal national banks used the "conflict" preemption standard enunciated in *Barnett Bank of Marion County N.A. v Nelson*. (EOR 2:58-78)

The Defendants argued Mr. Nguyen's claims against Aurora Loan Services must be dismissed due to preemption because Aurora was a federal savings association when Mr. Nguyen's loan was *originated* (using the time the *contract* was entered into as the applicable date).

Plaintiff argued that the statute was being misinterpreted by the defendants and that, if applied properly, there would not be any preemption. The district court found that the date the contract was entered into was the operative time period for

6

analysis of this statute. It is plaintiff's position that the date the loan was entered into is irrelevant.

At the time the district court had the issue before it, the Ninth Circuit had not weighed in on this issue.  The issue also came very late in the litigation. It was not even discussed in their moving papers for summary judgment.

The court gave defendants a second bite at the apple and allowed further briefing on plaintiff's claim under the UCL based on (1) MERS; (2) robo-signing; (3) the suspense account; and (4) the unfair and fraudulent terms in the workout agreement that promised to provide a long term solution on the grounds the moving party, defendant Aurora Loan Services, LLC failed to brief it in its motion for summary judgment. (EOR 1:28-37)

At that juncture, defendant Aurora Loan Services, LLC asserted that any claims brought under California Business & Professions Code §17200 et seq. was preempted under HOLA because Congress had preempted the entire field of regulation in this regard.

On July 11, 2011 the Office of the Comptroller of Currently (OCC) adopted amendments to its regulation governing organization and functions wherein the Office of Thrift Supervision (OTS) which regulated federal thrift savings associations was integrated into the OCC. The Final Rule was published in the

Federal Register, Volume 76, No. 140 on Thursday July 21, 2011 starting at page 43549. (EOR 2:58-78)

Based on this integration, plaintiff countered that the correct test was conflict preemption and cited *Barnett Bank of Marion County N.A. v Nelson*.

In its tentative ruling distributed on March 18, 2013, this court came to the conclusion that Mr. Nguyen's Unfair Competition Law claim brought under California Business & Professions Code §17200 et seq. was preempted under HOLA because Aurora was a federal thrift Savings & Loan Association and the entire field was preempted.

Plaintiff's counsel pointed out to the court that this issue should be determined by the CFPB; it was not one of the issues that was originally brought up at the hearing on motion for summary judgment and not one that was supposed to be briefed, and in any event, the court's power to determine such a preemption issue was taken away and vested in the OCC after July 21, 2011. Furthermore, the OTS was integrated into the OCC and all OCC regulations now applied to the federal thrift Saving & Loan Associations, too.

Second, the UCL claim was broader than the delay in crediting Mr. Nguyen's payments; it also encompassed the issue of fraudulent assignments being made by Aurora which cut off Mr. Nguyen's full rights when trying to avoid foreclosure.

8

Finally, Mr. Nguyen did qualify and obtain a permanent modification showing that Aurora failed to act in good faith to attempt to avoid foreclosure after Mr. Nguyen was discharged in Chapter 7 bankruptcy and entered into a Special Forbearance plan where he was promised it would lead to a reinstatement of his permanent modification.

## V.   ARGUMENT

### A. **Standard of Review**

Dismissal for failure to state claim under FRCP 12(b)(6) is reviewed *de novo*. *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1069 (9th Cir. 2011). The Court must accept Appellant's allegations of material facts as true, and construe them in the light most favorable to Appellants. *Id.*

A district court's decision to grant, partially grant, or deny summary judgment or a summary adjudication motion is reviewed de novo. *See, e.g., Szajer v. City of Los Angeles* (9th Cir. 2011) 632 F.3d 607, 610); *Universal Health Servs. v. Thompson* (9th Cir. 2004) 363 F.3d 1013, 1019.)

Summary judgment is not proper if material factual issues exist for trial. *See Simo v. Union of Needletrades* (9th Cir. 2003) 322 F.3d 602, 610.

On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant

substantive law. *See Olsen v. Idaho State Bd. of Medicine* (9th Cir. 2004) 363 F.3d 916, 922. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *See Balint v. Carson City* (9th Cir. 1999) 180 F.3d 1047, 1054.

The abuse of discretion standard is used for denying a motion for leave to amend. (*Serra v. Lappin* (9th Cir. 2010) 600 F.3d 1191, 1195.) Dismissal without leave to amend is improper unless it is clear that the Complaint could not be saved by any amendment. (*Harris v. Amgen, Inc.* (9th Cir. 2009) 573 F.3d 728, 736.)

B.  **The Claim Based on Breach of Good Faith and Fair Dealing Was Improperly Dismissed**

On August 8, 2013 the Ninth Circuit reversed dismissal of a claim for breach of TPP in Corvello v Wells Fargo *2013 U.S. App. LEXIS 16415 (9th Cir. 2013).* This followed *West v. JPMorgan Chase Bank* (2013) 214 Cal.App.4th 780 **which** was decided by the California Court of Appeal, District 4, Division 3 on March 18, 2013.

Similarly on October 31, 2013 the California Court of Appeal, District 4, Division Three determined that a claim for breach of a promise because the federal guidelines of Fannie Mae 09-05R must be read into the contract in order to make it legal, and that the servicer had a duty to act in "good faith." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 76.)

10

Here, the court is confronted with a Special Forbearance plan that followed after the borrower filed bankruptcy after he obtained a permanent modification in order resurrect his ability to modify his loan.

Plaintiff alleged that Aurora breached the covenant of good faith and fair dealing.

The District Court held,

"Plaintiffs claim for a breach of the implied covenant of good faith and fair dealing rests on breach of a purported promise that is contrary to the express terms of the written agreement between the parties; it thus must fails a matter of law."
(EOR 1:45)

The court explained that the agreement stated there would be arrearages after the special forbearance plan, captioned as a "WORKOUT" agreement, ended. Thus, it found any breach of good faith to modify or cure the arrearage in any other manner in order to avoid foreclose to be contrary to this express provision within the agreement. (EOR 1:45)

However, the district court's holding ignored that Aurora "had a contractual duty to *work with* [plaintiff] *to identify* the feasibility of, and implement, a foreclosure prevention *alternative*, and to do so in good faith." *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at page 764th.

Here, Mr. Nguyen alleged that "had not intention" to work with him to modify his loan and instead chose to "pursue foreclosure."

11

In Mr. Nguyen's case, he was in fact, foreclosed upon and evicted. Moreover, he had previously qualified for and received a loan modification. It was the intervening Chapter 7 that threw a kink into it, which Mr. Nguyen was not, advised would occur. (EOR 2:307-310)

Additionally, like *Lueras,* Mr. Nguyen received a separate promise after the plan ended that his home would not be sold at foreclosure. This separate promise was actionable as a separate and independent breach, showing Aurora failed to act in good faith.

Unlike *Lueras*, Mr. Nguyen did not have a claim for breach of contract; instead it was a claim for breach of the implied covenant of good faith and fair dealing. That distinction should not make a difference because the Lueras court noted that the servicers conduct (e.g. whether it acted in good faith or not) was the key factor. In *Lueras,* Fannie Mae 09-05R applied making the good faith an express term of the contract.

Consequently, the analysis employed in *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at page 221, supports Mr. Nguyen's position that his breach of good faith and fair dealing claim based on the Special Forbearance Agreement furnished by Aurora should not have been dismissed.

The facts alleged in the Second Amended Complaint lead to the conclusion that Aurora lacked good faith in the process. For example, Mr. Nguyen entered the

12

Workout Agreement and made all of his payments that were accepted and cashed. Aurora had not identified the feasibility of a foreclosure prevention alternative. Aurora simply sold Mr. Nguyen's home. An entire year went by, contrary to the Making Home Affordable Guidelines which state that the Servicer should identify a solution within the first three months. As such sufficient facts were alleged that would lead to the plausible conclusion that Aurora breached their duty of good faith. *(Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 76.) (EOR 2:159, 163, 167-220)

Similar in nature to this case is *Chao v Aurora Loan Services, LLC* Case No. 4:10-cv-03383-SBA (N.D. Cal Order Denying Motion to Dismiss filed 09/13/11). The *Chao* court found that the plaintiffs had a right to request rescission of their special forbearance agreements on the ground that *Aurora failed* to provide any consideration. The District Court took short shrift of defendants' contention that the plaintiff were under a duty to pay their underlying mortgage and that the sole promise under the forbearance agreement was to temporarily forbear the foreclosure. (Order page 11) As the court properly noted where the Agreement is ambiguous or has conflicting interpretations, the pleadings are construed in the light most favorable to the plaintiff and a motion to dismiss (or demurrer) should not be granted on that ground. *Id*. *Chao*.

C. **15 USC §1639(f) Was Erroneously Dismissed**

13

15 USC §1639f captioned "Requirements for prompt crediting of

home loan payments" was enacted on July 21, 2010 and provides:

> (a) In general. In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, except as required in subsection (b).
>
> (b) Exception. If a servicer specifies in writing requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the servicer shall credit the payment as of 5 days after receipt.
>
> P.L. 111-203, Title XIV, Subtitle E, § 1464(a), 124 Stat. 2184.

Plaintiff listed a series of checks showing that Aurora delayed in posting

payment to his account and alleged Aurora failed to "credit[] to Mr. Nguyen's

account… within five days after receipt in a manner *that would prevent extra*

*charges and additional interest* from being incurred on Mr. Nguyen's home loan."

Paragraph 78 of the SAC went on to allege:

> As a result of Aurora's failure to credit Mr. Nguyen's payments when received or within 5 days after receipt for any partial payment made, **Mr. Nguyen incurred extra charges on his account**, such as added interest and late fees due to the delay in crediting the payments to Mr. Nguyen's account when received.

14

The statute is clear that any charge to the consumer or negative report to the CRA would be a violation of the statute. The violation is memorialized in SAC ¶75 by alleging that extra charges and interest were being incurred. (EOR 3:360-362)

Defendants ultimately alleged that the statute was not in effect until after Mr. Nguyen made his last payment. Defendants allege that the statute did not go into effect until January 1, 2011.

However, there is no case that has ever decided that. It is mere supposition at this point.

Moreover, although the last payment by Mr. Nguyen was made in September 2010, the record is clear that Aurora applied his money in 2011 which occurred in the amount of $2,000.00. Thus, the issue is whether suspending and applying the suspended funds in 2011 demonstrates a violation after the effective date of the enactment of 15 USC §1639f.

It is Appellant's position that each day after January 1, 2011 that Aurora continued to hold onto those funds in suspense, regardless that they were received in 2010 or earlier, demonstrate a clear violation of this statute and the court's dismissal by way of summary judgment was in error.

In any case, 15 USC § 1639f was not "positive law" meaning it was not evidence in itself but rather a reorganization of already existing laws that was determined to be codified within the USC under this section.

15

In 2008, The Board published final rules amending Regulation Z, which implemented the Truth in Lending Act and Home Ownership and Equity Protection Act.  Part of that act encompassed this rule which was based on cases such as *Rominus, infra*, that stretches back to the mid-1990s. This is all well before the time Mr. Nguyen received his loan and the transactions that occurred with the use of the suspense account were no more legitimate in the 1990s as they were when Aurora was using it to pad Mr. Nguyen's account with more late fees, interest and accrued principal balance as a result.

Consequently, it was a red herring to state that prior to 2011, a bank could delay applying a borrower's payment *infinitus*.  The ruling should be reversed.

D. **The Court Erred in Dismissing the UCL Claim based on Preemption**

Third, the district court dismissed the remaining claims based on preemption. The court considered what it termed both HOLA preemption and whether preemption under the Dodd Frank Act was retroactive.

Consumer law advocates argued that the application of existing preemption laws contributed to the predatory lending practices, which in turn, contributed to the recent financial crisis. Fed Reg, Vol 76, No. 140, 43554 (July 21, 2011).

On July 21, 2011 the OTS was integrated into the OCC by the Dodd-Frank Act which ensured that state laws would not be preempted unless there was a conflict preemption analysis performed wherein there was "substantial evidence"

16

to support the preemption for any future actions. Fed Reg, Vol 76, No. 140, 43549-69 at 43547 (July 21, 2011).

The court found application under Dodd Frank would be "retroactive" because the trigger date, according to the court, was the date the contract was entered into.  However, a careful reading of the act demonstrates that trigger date is whether a court is confronted with the issue before or after July 11, 2011.  Here, the court ruled on March 18, 2013, well after the effective date.

> The Act specifically provides that, as of the transfer date, determinations by a court or by the OCC under the Home Owners' Loan Act (HOLA) with respect to Federal savings associations must be made in accordance with the laws and legal standards applicable to national banks regarding the application of state law…in accordance with the legal standard for preemption in the decision of the Supreme Court in'' *Barnett Bank of Marion County, N.A.* v. *Nelson.*

The Dodd-Frank Act imposes "State consumer financial laws may be preempted only if (1) Application of such law would have a discriminatory effect on national banks compared with state-chartered banks in the state; (2) in accordance with legal standards for preemption in the decision of the Supreme Court in *Barnett Bank of Marion County N.A. v Nelson* the state consumer financial law "prevents or significantly interferes with the exercise by the national bank of its powers." Fed Reg, Vol 76, No. 140, 43549-69 (July 21, 2011).

The OCC also established new procedures wherein any issue of whether a state financial law was preempted by federal law would be referred to the CFPB for determination. Fed Reg, Vol 76, No. 140, 43552 (July 21, 2011).

### E.  Aurora Did Not Plead Preemption As An Affirmative Defense So Summary Judgment Was Inappropriate

Motions for summary judgment are based on the pleadings. Preemption is an affirmative defense. Aurora never pled preemption as an affirmative defense.

Aurora summarily contended the claims were preempted under HOLA but never supplied any substantial evidence to prove that this is so. *See, Barnett Bank of Marion County, N.A. v. Nelson* (1996) 517 U.S. 25. (preemption is an affirmative defense on which the defendant has the burden of proof). (See also, Comptroller of the Currency, letter dated May 12, 2011 to the Hon. Thomas R. Carver, Addendum). Aurora failed to meet this burden.   Rather it made the conclusory argument that OTS preempts the entire field under HOLA.

Aurora was required to provide the court with substantial evidence, such as a letter from the Comptroller of Currency informing this court that it had reviewed the law as being applied in this case and found it preempted.

Aurora failed to meet this burden to show there is any preemption at all. (EOR 2:250-332 lack of evidence)

Preemption must be supported by "substantial evidence." Id. 43556.

"Furthermore, as of July 21, 2011, those rules and precedents will apply to Federal

savings associations to the same extent they apply to national banks." Id. 43556.

Consequently, it was an error to find in Aurora's favor based on preemption,

and the judgment should be reversed.

Even if the Ninth Circuit does not agree on this ground, the decision should

still be reversed because the application of the Dodd Frank Act was too restrictive.

F. **The Dodd-Frank Act Applies to This Action Because It Was Commenced After July 21, 2011**

The court found that "Plaintiff entered into the relevant contracts with

Defendant "before Dodd-Frank was enacted" and the claims involving those

agreements "are subject to the preemption regime in place before Dodd-Frank."

(Doc 87:5 fnt 5)

Plaintiff agrees with the court that Congress eliminated "field preemption for

Federal thrifts and preemption for operating subsidiaries, and those standards

operative prospectively." Id at 43557

However plaintiff and the court part ways in that the court focused on when

the "contract was entered into," instead of when this lawsuit was initiated and the

issue was presented to the court for a preemption determination.

The OCC made clear that preemption *determinations* after July 21, 2011 (the effective date) "would be subject to the new Dodd Frank Act procedural provisions." 43557. *See also, Ellsworth v. U.S. Bank, N.A.* (N.D. Cal. Dec. 11, 2012) 2012 U.S. Dist. LEXIS 176277 (ND Cal 12/19/12) "*Actions and regulations in effect prior to the effective date are not subject to the case-by-case requirement, but…the continued validity of those precedents applicable to state consumer financial laws is subject to standards of Section 1044(b)(1).*" [emphasis added]

"When a statute is as clear as a glass slipper and fits without strain, courts should not approve an interpretation that requires a shoehorn." *Demko v. United States* (Fed.Cir. 2000) 216 F.3d 1049

The court's interpretation, adopted by some other courts and defendants in this action does not comport with the reading of the statute.

> 12 USC § 5553. Preservation of existing contracts
> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the *applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established* by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act [enacted July 21, 2010].  [emphasis added]

There was no  "regulation, order, guidance, or interpretation prescribed, issued and established" with regard to the contract Aurora and Mr. Nguyen entered into before July 21, 2011.  To the extent any district court was persuaded to use the

20

consummation date of a contract as the defining line, without more, it was clearly wrong.

The reading by this district court and other jurisdictions did not take into account this phrase. A conclusion that all contracts entered into prior to July 21, 2010 would be exempt would make the phrase "shall not be construed to alter or affect the *applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established* by the Comptroller of the Currency…" superfluous.

The fact that the underlying contract was entered into prior to July 21, 2011 should have no impact on that analysis.

G. **The Court Erroneously Used the Field Preemption Standard instead of Conflict Preemption Standard**

The district court took four cases from Aurora's brief and relied upon them in its analysis in finding that preemption existed. Each of those cases was decided prior to July 21, 2011 using field preemption analysis that Congress has abolished. (*Biggins v. Wells Fargo & Co.* (N.D.Cal. 2009) 266 F.R.D. 399, 415-416, *Silvas v. E\*Trade Mortg. Corp.* (9th Cir. 2008) 514 F.3d 1001, 1005. *Murillo v Aurora Loan Servs, LLC* 2009 US LEXIS (ND Cal July 17, 2009), *Munoz v Fin Freedom Senior Funding Corp.* 567 F. Supp. 1156 (CD Cal 2008).

Where Congress wanted to eliminate field preemption for Federal thrifts and preemption for operating subsidiaries it clearly did so. 43557.

21

"[I]n all cases there must be a conflict that triggers preemption under the standard articulated in the Barnett decision." 43557

Unlike HOLA, the NBA does not contain language indicating that its regulations are intended to occupy the entire field. 12 C.F.R. § 560.2.

None of the cases used against Nguyen were based on conflict preemption, and as such, have no precedential value.

A case was decided outside the circuit and the conclusion went against Nguyen. However, it had no binding effect on the district court because it was not an issue that has been decided by the Ninth Circuit.

H. **The Court Needed To Come To the Conclusion that Cal Bus & Prof Code §17200 Prevents or Significantly Interferes with HOLA**

The first step to determine whether a law is preempted is to determine preemption under the conflict preemption standard laid out in *Barnett Bank of Marion County, N. A. v. Nelson*, *supra*, 517 U.S. 25. Id at 43555.

> [A] federal law may be in "irreconcilable conflict" with state law. (*Rice v. Norman Williams Co.* (1982) 458 U.S. 654, 659 [73 L.Ed.2d 1042, 102 S.Ct. 3294].) Compliance with both statutes, for example, may be a "physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul* (1963) 373 U.S. 132, 142-143 [10 L.Ed.2d 248, 83 S.Ct. 1210]; or, the state law may "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Hines v. Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 61 S.Ct. 399].) *Barnett* at 31.

The legal reasoning must support a finding that the state financial law will "prevent or significantly interfere" federal law. Id at 43555.

The OCC expressly adopted the standard in *Barnett*.  Generally, UCL claims will fall outside preemption. *Martinez v. Wells Fargo Home Mortg., Inc.* (9th Cir. 2010) 598 F.3d 549, 555(citing OCC Advisory Letter, Guidance on Unfair or Deceptive Acts of Practices, 2002 WL 521380, at *2, *7 n.2 (Mar. 22, 2002)).

HOLA was created to keep home owners in their homes during the Great Depression.   HAMP was created to keep home owners in their homes during the Great Recession. TILA (Truth in Lending Act) was created to protect consumers in financial arrangements on their mortgages and other credit transactions.

The court's opinion focused on HOLA.  HOLA is a home owner's statute whose primary purpose is to keep the home owner in their home. As such, HOLA preemption cannot be used as a reason to forbid relief from home owners who have been injured by servicers who refuse to follow their own contracts, federal and state law.

Here, the court summarily concluded that California B&P Code §17200 claims were expressly preempted as a lending disclosure under HOLA and stopped its analysis at that point.

The court found that making allegations that would violate 15 United States Code section 1639f (failure to promptly apply payments to a loan) were "Aurora's

23

practices regarding the 'servicing' of his mortgage, as well as 'loan related fees,' 'terms of credit.' including the 'capitalization of interest,' and adjustments to loan balance, the alleged violations are expressly preempted by the OTS regulations §§ 560.2(b)(4)-(5), (10). (Doc 87 pg 6-7). However, the statute being used was a federal statute, not a state statute with regard to substantive law.

But a federal regulation cannot preempt another federal regulation or conflict with it. *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457They surely do not preempt regulations regarding real property or its foreclosure, either. (*Mabry v. Superior Court (Aurora Loan Services)* (2010) 185 Cal.App.4th 208, 214.)

Moreover, on August 1, 2013 the California Supreme Court in *Zhang v The Superior Court of San Bernardino County* explained "an action under the UCL is not an all-purpose substitute for a tort or contract action. Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices." *Zhang v Superior Court* 57 Cal 4th 364 (2013).

Nevertheless, the district court used similar analysis to find the workout agreement under HAMP and MERS systems were also preempted under HOLA. Preemption with regard to HAMP was not found in Wigod, West, or Corvello. This holding seems contrary to precedent.

24

Even prior to the Dodd-Frank Act, preemption analysis started with the premise that the state law is not preempted by federal statute. (*Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230.)  To the extent *Silvas* disagreed with the US Supreme Court it appears it was without bounds to do so.  However, that issue has never been tested by the US Supreme Court and *Rice* is still good law.  This court is bound by US Supreme court legal precedent which is superior to the Ninth Circuit law of *Silva*.

Second, claims based on federal laws like HAMP and TILA which are federal laws cannot be preempted – because they are federal laws. No private right of action is needed under California's UCL statute.

On August 1, 2013 the California Supreme Court also considered the issue of whether a private right of action was required in order to pursue a UCL claim under the "unfairness" prong. *Rose v Bank of America, N.A.*, 57 Cal. 4th 390 (2013).  In *Rose*, a class action was filed alleging violation of the federal Truth in Savings Act ("TISA").  Congress had previously provided a private right of action under that regulation, but then later revised that statute which took it away.  The California Supreme Court held that the plaintiffs could still pursue their claims for violations of TISA under the UCL on the grounds that "Congress has also made it plain that state laws consistent with the federal statute are not superseded."

25

Here, finding that the Servicer failed to act in good faith, and as such employed unfair or fraudulent practices when foreclosing using the pretext of processing the HAMP modification application or looking to alternatives other than foreclosure, would be wholly consistent with federal statute, and as a result, would not be superseded.

The suspense account use which delays the application of payments of the borrower, sometimes exceeding a full year, have been found to be unlawful by federal statute. Consequently, the prior practice is against public policy making it unfair and fraudulent, too. Because it was consistent with federal statute, the UCL should not be superseded in this respect either.

After the Dodd-Frank Act wherein the same NBA principals are used, the result has always been the same.

> This is because they arise from generally applicable state laws that are expressly deemed "not inconsistent with the real estate lending powers of national banks" and only "incidentally affect the exercise of national banks' real estate lending powers". See 12 C.F.R. § 34.4(b); see also *Martinez v. Wells Fargo Home Mortg., Inc.*, *supra*, 598 F.3d at page 555. "State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers." *Lucia v. Wells Fargo Bank, N.A.* (N.D.Cal. Apr. 22, 2011) 798 F.Supp.2d 1059, 1066-1067
>
> In *Lucia v. Wells Fargo Bank, N.A.*, *supra*, 798 F.Supp.2d at pages

1066-1067, it is clear that in this particular matter, Mr. Nguyen's claims are

premised upon state contract law, unfair competition which are state laws of general application.

Preemption of Mr. Nguyen's claims based on HOLA preemption in this case would be contrary to sound, well founded legal principles and to Aurora's promises it made in its contract with the U.S. government under the Servicer Participation Agreement which preconditioned its grant of government TARP funds from the U.S. Secretary of State in order to assist homeowners to stay in their home.

That is, the Home Owners Loan Act (HOLA) only preempts state regulation of lending activity.   Plaintiff's claims do not involve state regulated lending, and thus are not preempted.

The UCL simply is not a consumer financial law, but a law of general application. Furthermore, Aurora acknowledged in its contract that it is subject to state and federal laws, contradicting its present position and the position of the district court.  Aurora's brazen attempt to avoid responsibility stands in explicit contrast to its prior position under well-documented and binding legal obligations. (HAMP guidelines and SPA)

The Home Affordable Modification Program HAMP is a federal program aimed at averting the nationwide loss of home ownership to bank foreclosures.  It is part of the Troubled Asset Relief Program, established under the Emergency Economic Stabilization Act of 2008 (EESA).

27

Under HAMP, home owners' monthly mortgage payment are decreased by converting their loans from adjustable-rate to fixed-rate mortgages and including the payment of taxes and insurance in the monthly payment amount, reducing mortgage interest rates, extending the repayment periods, and forgiving or as in most cases, forbearing principal.

Mortgage servicers are eligible for lucrative payments from the U.S. Department of the Treasury in exchange for their promise to follow HAMP guidelines. Aurora entered into a HAMP contract in 2009 under which it stands to receive TARP funds from American taxpayers in exchange for its promise to participate in HAMP (Servicer Participation Agreement aka SPA).

Under HAMP guidelines, which are promulgated by the U.S. Department of the Treasury, home owners must be evaluated within 30 calendar days for HAMP, so that unnecessary foreclosure activity can be halted.

Here, Mr. Nguyen was given a TPP under HAMP, then after some time, finally a permanent modification. Then after his bankruptcy was discharged, his ability to qualify for a modification magically disappeared and he had to start the HAMP process over in a special workout plan called a Special Forbearance Plan. Under that plan, Aurora reduced his monthly mortgage payments but suspended the application of his monthly mortgage payment. After he made all his required payments, he was denied a permanent modification or any other promised long

28

term solution and Aurora foreclosed. Due to the unfair way his payments were collected but not applied, he had no way of curing a default.

Consequently, although Mr. Nguyen was eligible for and applied for all foreclosure alternatives available to him, the programs under EESA and HAMP did not prevent the foreclosure of his home as intended by the federal programs.

Plaintiff contended that the language in the workout agreement was unfair and fraudulent and the failure to apply his payments to his loan obligation were unfair and fraudulent.

Aurora never obtained that letter from the OCC because such a position would contradict the OTS's own stated position on preemption of state consumer protection and precedent in this Circuit much less the new law that the Court is supposed to allow the OCC to impose. (EOR 2:250-332 lack of evidence).

HOLA was a product of the Great Depression of the 1930s.   It was intended to provide emergency relief with respect to home mortgage indebtedness at a time when as many as half of all home loans in the country were in default. *Fidelity Fed. Sav. & Loan Ass'n v de la Fidelity Fed. Savings & Loan Association v. De la Cuesta* (1982) 458 U.S. 141, 159.   It was enacted  to restore the public's confidence in savings and loan associations, also known as  thrifts or federal savings associations (FSAs).   Congress enacted HOLA as a radical and comprehensive response to the inadequacies of the existing state system. Id at 160.  Because it enacted the statute

29

hurriedly in order to provide for the relief of the man who is about to lose his home, Id

at 164, the Act set out the general framework and left the details to its regulatory

administrator.    Congress gave broad discretion to regulate the newly created federal

savings and loans. Id at 163-164. (citations omitted).   The Office of Thrift

Supervision (OTS), an office of the Department of Treasury, was delegated the power

to prescribe regulations under HOLA. (12 C.F.R. § 560.1 (2012).)

As described above, on July 21, 2011 the OTS was integrated into the OCC and

rules and regulations regarding preemption are now the same for national banks and

thrifts or federal savings associations.

Now all financial institutions must abide by conflict preemption analysis and not

rely upon field preemption analysis.

The purpose of preemption of state laws is to facilitate the safe and sound

operation of federal savings associations, to enable federal savings associations to

conduct their operations with the best practice of thrift institutions in the United

States, or to further other purposes of the HOLA.

Here, Cal Bus & Prof Code §17200 is not irreconcilable with the safe and

sound operation of federal savings associations (and it never has been).

The underlying principle is that state laws that are not lending-specific are not

preempted.  OTS emphasizes that its regulations do not preempt basic state laws.  The

OTS wants to make clear that it does not intend to preempt basic state laws. See also,

61 C.F.R. 5095-01 and 61 C.F.R 50965.

It was unfair to throw Mr. Nguyen into a loss mitigation plan where his payments were being held in a suspense account instead of being applied to his loan. This claim was based on 15 USC §1693f which is part of TILA. This court found that this claim was preempted based on the analysis in *Silvas v. E\*Trade Mortg. Corp.*, *supra*, 514 F.3d at page 1006.  But, "TILA's savings clause states expressly that TILA does not preempt any state law unless that law is inconsistent with TILA. (15 U.S.C. § 1610(b).) Silvas did not conclude [*1149] that TILA based state-law claims are preempted by a conflict with TILA's substantive provisions, and this proposition has been rejected by the majority of district courts that have considered it." *Romero v. Countrywide Bank, N.A.* (N.D.Cal. 2010) 740 F.Supp.2d 1129

It was fraudulent to verbally promise that the loss mitigation plan would lead back to his prior permanent loan modification, post-bankruptcy. (EOR 2:159-164)

Nowhere does HOLA allow a financial institution to commit fraud.

Finally, by imposing such a law upon Aurora, it would not have any discriminatory effect upon Aurora in comparison to state-chartered banks in the state. It is a law of equal application.

I.  **The Legislature Has Left Preemption Determinations Up to the CFPB**

The Dodd-Frank Act imposes new procedures and consultation requirements with respect to how the OCC may reach certain future preemption determinations and clarifies the criteria for judicial review. Id. 43551

The OCC must first consult with the Consumer Financial Protection Bureau (CFPB). Id. 43552

Specifically, the Act requires that the OCC make preemption determinations with regard to state consumer financial laws under the Barnett standard by regulation or order on a "case-by-case" basis in accordance with law.  Case-by-case analysis is a determination by the Comptroller as to the impact.  The OCC must first consult with the Consumer Financial Protection Bureau (CFPB). Id 43551-552.

Simply, put the Legislative branch has taken away this court's power to determine if preemption applies.  The bank who wishes to invoke preemption must submit the case to the OCC Comptroller who will then consult with CFPB before making a determining on whether or not the state law is preempted on a case-by-case basis.

This procedure applies to Aurora. The Final Rule adds 7.4010(a) and 34.610 which provide that federal savings associations and their subsidiaries are subject to the same laws and standards, including OCC regulations, as are applicable to national banks and their subsidiaries regarding the preemption of state law. 43558

32

Aurora never went to the OCC to obtain this determination, likely because it knew that it could not gain a favorable decision if it did so.

Consequently, Aurora's argument for preemption that was adopted by the District Court should be reversed.

J. **The UCL Does Not Conflict with HOLA So There Is no Preemption under the Barnett Standard**

Preemption analysis starts with the premise that the state law is not preempted by federal statute. (*Rice v. Santa Fe Elevator Corp.*, *supra*, 331 U.S. at p. 230.)

To succeed on its preemption defense, Aurora must show that the activity it claims is preempted is related to "lending." (*Barnett Bank of Marion County, N. A. v. Nelson*, *supra*, 517 U.S. 25.) (preemption is an affirmative defense on which the defendant has the burden of proof). (See Comptroller of the Currency, letter dated May 12, 2011 to the Hon. Thomas R. Carver). Aurora failed to meet this burden. Rather it made the incorrect and conclusory argument that OTS preempts the entire field under HOLA.

Aurora cites OTS Final Rule, 61 Fed Reg. 50951, 50966 (Sept. 30, 1996) in support of its proposition that plaintiff's claim under California Business & Professions Code section 17200 is pre-empted by some unknown phantom federal law that is never disclosed in the moving paper. (Supp B 8:18-20). The OTS does not exist any longer so its Final Rule proclaimed in 1996 is of limited value.

33

The claim dealing with the Suspense Account is related to Regulation Z, a federal regulation.  When the UCL is being used to enforce federal law, the UCL is not preempted. (*McKell v. Washington Mutual, Inc.*, *supra*, 142 Cal.App.4th at p. 1485.)

As confirmed in *Barnett Bank of Marion County, N. A. v. Nelson*, *supra*, 517 U.S. 25, the type of preemption envisioned by HOLA is "conflict preemption."  In order to invoke this rule, the court must find that the state law (Bus. & Prof. Code, § 17200) conflicts with some federal regulation.  Aurora has failed to point to the federal regulation that this state law purportedly conflicts with or how it does conflict with federal law.

Additionally, the contracts referred to are those where the loans were "originated" by a FSA. Aurora was not Mr. Nguyen's "loan originator," it merely became his loan "servicer" so there is no reason to find preemption exists here.

Even if HOLA still applied, appellant contends that it does not, the underlying principle is that state laws that are not "lending-specific" are not preempted.  The UCL is not "lending-specific." [See also, 61 C.F.R. 5095-01 and 61 C.F.R 50965]

The OTS has instructed FSAs that state consumer protection laws are not preempted because they are not in conflict with HOLA.  OTS Chief Counsel Letter dated December 24, 1996 (1996 WL 767462)  mentioned that these non-preempted

state laws include: Contract and commercial law, Real property law, Homestead laws specified in 12 U.S.C. §1462a(f), Tort law, Criminal law, and any other law that OTS, upon review, finds (a) furthers a vital state interest; and (b) either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expresses in paragraph (a) of this section. 12 C.F.R. §560.2(c)

Cal Bus & Prof Code §17200 is law of general application wherein the courts have found that claims are based on laws of general application that "incidentally" affect lending activity.  (*Gibson v. World Savings & Loan Assn.* (2002) 103 Cal.App.4th 1291 [Cal App 4 Dist. 2002].)

The claim is based on federal law that dates back to the 1990s finding such suspense accounts unfair. Federal law cannot be preempted.  There is no conflict. (*McKell v. Washington Mutual, Inc.*, *supra*, 142 Cal.App.4th at p. 1485.)

### 1.  A Genuine Issue of Material Fact Exists re: Suspense Account

In order to state a claim under the UCL, a plaintiff must allege that a defendant's unlawful, fraudulent, or unfair business acts caused an injury in fact and loss of money or property. (Cal. Bus. & Prof. Code §§ 17200, 17204.)

Aurora contends that it was okay for them to put plaintiff's payments into a 'suspense' account instead of applying the funds to his loan.

There is a line of cases that hold it is unlawful, unfair and/or deceptive to fail to properly and accurately credit a borrower's payments to his loan. (See *Workman*

35

*v. GMAC Mortg. LLC* (Bankr.D.S.C. Nov. 21, 2007) 2007 Bankr. LEXIS 3887 [servicer held in civil contempt for, among other things, failure to promptly credit payments made before discharge from bankruptcy and charging of unauthorized late and attorneys fees]; *Islam v. Option One Mortgage Corp.* (D.Mass. 2006) 432 F.Supp.2d 181 (servicer allegedly continued to report borrower delinquent even after receiving the full payoff amount for the loan);*In re Gorshstein* (S.D.N.Y. 2002) 285 B.R. 118(servicer sanctioned for falsely certifying that borrowers were delinquent); *Rawlings v. Dovenmuehle Mortgage Inc.* (M.D.Ala. 1999) 64 F.Supp.2d 1156) (servicer failed for over 7 months to correct account error despite borrowers' twice sending copies of canceled checks evidencing payments, resulting in unwarranted late and other fees); *Ronemus v. FTB Mortgage Servs.* (Bankr.N.D.Tex. 1996) 201 B.R. 458 (among other abuses, servicer failed to promptly credit payments and instead paid them into a ''suspense'' account, resulting in unwarranted late fees and unnecessary and improper accrual of interest on the note). These cases were used to support the final amendment of Regulation Z in 2008.

Like the case of *Ronemus v. FTB Mortgage Servs.*, *supra*, 201 B.R. 458, Aurora noted some errors and inconsistencies that she could not explain. [See Leets Depo]

In *Ronemus* the court noted:

36

> FTB's witness stated that it placed payments received from the Chapter 13 Trustee in a "suspense" account until they equaled a regular Note payment, at which time it applied them on the loan. She stated that their computer program required this procedure. FTB's attempt to evade its obligation to promptly apply those payments by blaming its actions on a computer cannot be tolerated. The computer program could and should have been adjusted. Further, FTB offered no reconciliation of the monies placed in suspense. From the evidence presented, the court cannot determine if all payments made by the Debtors and by the Chapter 13 Trustee were properly accounted for and properly applied to the Debtors' note.

Here, Mr. Nguyen can prove he paid $66,381.28 towards his debt which accumulated a principal balance of $709.993.35 by September 1, 2008.  Whereas, if Mr. Nguyen had not attempted to pay down his loan but just paid the normal monthly payment on the dates specified as the first of the month, he would have only paid $57,129.84 and would have been left with a principal balance of $614,903.38. Then after foreclosure, Aurora took approximately $2,000.00 it was holding in suspense and applied it to the loan. (EOR 2:159-164)

 Due to the questionable mortgage underwriting and servicing on a predatory loan with negative amortization, by June 15, 2007 Mr. Nguyen hit his cap of $674,000.00 with a principal balance nearing $673,506.55. If the true terms of the loan were disclosed and the true payments Mr. Nguyen needed to make were disclosed his loan structure would have looked as follows:

| 2/1/06 | $1,794.63 | 7.65% | $585,000.00 | 360 |
|--------|-----------|-------|-------------|-----|
| 2/1/07 | $1,929.23 | 8.25% | $609,048.53 | 348 |

37

| 2/1/08 | $2,073.92 | 5.25% | $611,261.65 | 336 |
|--------|-----------|-------|-------------|-----|
| 2/1/09 | $2,229.46 | 3.82% | $618,641.75 | 324 |
| 2/1/10 | $2,396.67 | 3.55% | $615,465.12 | 312 |
| 2/1/11 | $3,042.73 | 3.49% | $608,440.52 | 300 |
| 2/1/12 | $3,001.92 | 3.36% | $592,915.56 | 288 |
| 2/1/13 | $2,998.90 | 3.35% | $576,564.20 | 266 |

Aurora does not want this court look beyond 2008 because Mr. Nguyen's loan payments initially made had a drastic impact on his loan. For example, his initial interest rate was 1.5%. He made a payment in December 2006 in the amount of $500.00 wherein his interest was only $73.00 due to the low interest rate. By not applying that payment, Mr. Nguyen lost the opportunity in the Note to pay down his principal by over $400.00. $400.00 is not a large sum, the savings of accrued interest over time can make a significant impact over the life of the loan. Finally, as shown below Homecomings surrendered its right to do business on November 17, 2006. Aurora contends it did not start servicing plaintiff's loan until 2008. A material issue arises as to whom the payments went to in the interim. There is no intermediary assignment of servicing rights by Aurora in this case.

At the end of the loan, over $1,000.00 suddenly came out of the suspense account in 2011 and is applied to Mr. Nguyen's loan. There is no evidence how

long Aurora held onto the money before applying it to the loan because Aurora failed to show any reconciliation of its account. Maybe Appellant lost the opportunity where this $1,000.00 could have averted a default due to the impact of misapplication of payments have on this type of loan. (EOR 2:159-164)

Perhaps the most serious abuses occur when servicers falsify mortgage balances or arrearages or seek to foreclose on properties even when the borrowers are current on their payments.  Unwarranted claims of default harm borrowers apart from the risk of foreclosure because they negatively impact credit ratings so that borrowers will find it more difficult to refinance their home loan, or even to obtain a new job or promotion. Borrowers are rarely offered assistance in navigating a servicer's complex and confusing accounting, and it is seldom that they are able to communicate with any servicing employee with authority to resolve the issue. Faced with lax record-keeping by mortgage servicers, courts have been highly critical and in several cases have noted the servicers' intentional conduct in inflating balances and arrearages.  See e.g., Maxwell v. Fairbanks Capital Corp., 281 B.R. 101, 117 (Bankr. D. Mass. 2002) ("in a shocking display of corporate irresponsibility, [Fairbanks] repeatedly fabricated the amount of the Debtors obligation to it out of thin air."); In re Gorshtein, 285 B.R. 118 (Bankr. S.D.N.Y. 2002)

The most devastating result of mortgage servicing abuses is unwarranted foreclosure of the borrower's home. Foreclosures uproot families and children, destroy credit histories, and may preclude future homeownership opportunities. Foreclosures often consume a life's savings and all of a family's assets. Foreclosures present a serious threat to neighborhood stability and community well-being.

Aurora contends there is no injury in fact. However there is economic loss to go around. Appellant lost the opportunity to save his home. He was forced from his home, and suffered additional credit damage from the additional charges that could have been avoided, too. (*Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1, 12.) (EOR 2:159-164)

In Medrazo, the defendant violated a Vehicle Code provision requiring that a hanger tag disclosing dealer-added charges be attached to all motorcycles offered for sale. (*Medrazo v. Honda of North Hollywood*, *supra*, 205 Cal.App.4th at p. 4.) If the hanger tag is not attached, or if the dealer-added charges are not disclosed on the tag, the dealer may not collect the charges. The plaintiff class lost money as a result of the defendant's violation because the class members paid such charges even though the defendant had not attached the required hanger tags. (*Id.* at pp. 13-14.) It did not matter whether the class members had "relied" on the

missing hanger tags, nor was proof required that they would or would not have bought the motorcycles if the hanger tags had been attached and read.

Put another way, the violation was not the dealer's failure to disclose the added charges, but rather its collection of those charges in violation of the statute.

Like *Medrazo*, it does not matter whether Mr. Nguyen relied Aurora to apply his payments and no proof is needed to show that he would or would not have made the loan if it was disclosed that Aurora was going to take his payments and refuse to apply them to his loan until Aurora deemed there was a sufficient amount in the unapplied funds account to do so. It was Aurora's practice of putting those funds in an unapplied funds account, such as the 'suspense' account instead of crediting them to the debt owed in some fashion that violated Regulation Z, and at the very least was unfair and/or fraudulent. (EOR 2:250-56)

Mr. Nguyen paid $66,381.28 as of July 1, 2008 and had a balance approaching $709,993.35. If the servicer promptly applied the payments only $57,129.84 would have been owed during this time period with a lower resulting principal payment. At the very least, this was deceptive and the servicer should have disclosed this practice to Mr. Nguyen to make him aware that his actions in believing he was paying down his loan was actually hurting his chances of keeping the loan in good standing. (EOR 2:159-64)

The second important holding relates to the measure of restitution to be awarded at trial. Medrazo is really the only helpful opinion on this issue since Colgan v. Leatherman Tool Group, Inc., 135 Cal.App.4th 663 (2006). While Colgan was a "fraudulent" prong case, Medrazo addresses the measure of restitution in the context of the "unlawful" prong.

Medrazo held that the proper measure of restitution was the full amount of the unlawfully-imposed charges: "class members will be entitled to restitution of any money "which may have been acquired [by defendant] by means of such unfair competition" (Bus. & Prof.Code, § 17203)—i.e., the dealer-added charges that were not disclosed on hanger tags. (*Medrazo v. Honda of North Hollywood*, *supra*, 205 Cal.App.4th at pp. 13-14.) There was no question about the value of the motorcycles or whether the defendant could have sold them for the same price if the dealer-added charges had been properly disclosed.

As such, whether Mr. Nguyen was already in default or whether the current fair market value of the home was less than the amount owed at foreclosure is irrelevant to Mr. Nguyen's measure of restitution.

As shown above, and discussed in further detail below, this leaves speculation as to what extent Mr. Nguyen was in default. The amount of default has a drastic impact on the implications and can mean the difference between curing a default and reinstating the note or not. Here, the first notice of default

issued with only approximately $1,000 owed.  The second notice of default issued

two days later with an amount of $20,000.00 attached to it in order to cure the

default.

The totality of the circumstances and the evidence presented before this

court shows serious questions of material fact of whether the servicer is pulling the

amount of arrearage out of thin air.

### 2.  A Genuine Issue of Material Fact Exists re: MERS

First, under the three-pronged section 5 test, a plaintiff must allege: (1) a

substantial consumer injury; (2) that the injury outweighs any countervailing

benefits to consumers or competition; and (3) that the injury could not reasonably

have been avoided. (*Camacho v. Auto. Club of S. Cal.* (2006) 142 Cal.App.4th

1394, 1403.)

 In 1998 Mortgage Electronic Registration Systems, Inc. merged with New

MERS Corp.  However, the merger chose to keep the name Mortgage Electronic

Registration Systems, (with an "s") Inc.  The business purpose was to create an

electronic book entry system of tracking servicing and other mortgage related

rights.  Mortgage Electronic Registration Systems (with an "s") was nominated to

act on behalf of plaintiff's lender, Homecomings Financial Network, Inc. in the

deed of trust.  As of March 25, 2009 Mortgage Electronic Registration System, Inc.

43

(without an "s") was suspended from doing business in California and its Agent for Service of Process resigned. It was assigned entity number <u>C2416221</u>.

Mortgage Electronic Registration System<u>s</u>, Inc. (with an "s") was not registered or authorized to do business in California until 2010. It is not the same entity as without the "s" and has a different corporate Entity Number. (<u>C3306164</u> was filed on July 21, 2010). The organization with an "s" will be referred to as MERS. (Certified copies from Secretary of State submitted with this brief)

Although the latter was not registered to do business in California until July 21, 2010, it attempted to substitute in a new trustee on the plaintiff's deed of trust on or about October 16, 2008. The document was recorded on December 2, 2008 in the Riverside County Recorder's office.

By this time the Lender (Homecomings) MERS was nominated to act on behalf of, had already disappeared. Homecomings Financial Network, Inc. surrendered its right to do business in California on November 17, 2006. According to records in Delaware, it apparently merged with Homecomings Financial, LLC as a Delaware Company.

However, "Homecomings Financial, LLC," the only surviving entity has never asserted any right to the interest in plaintiff's note or property that was secured by the deed of trust. There is this lost year from November 2006 through 2008 when Aurora at least asserts an interest as a servicer. Yet, years later,

44

defendant initiated a nonjudicial foreclosure in California under a Power of Sale clause that was placed in plaintiff's Deed of Trust which was recorded in the Riverside County Recorder's Office by "Homecomings Financial Network, Inc." without connecting the dots of assignments.

This was initiated by recording a "Notice of Default and Election to Sell" dated 1/28/11 and signed by "S. Espinoza" purporting to be signing on behalf of "Quality Loan Service Corporation, as trustee  By: LSI Title Agency, Inc, as attorney in fact."  To complicate matters, LSI Title Agency, Inc. is not a subsidiary of LSI Title Company and is not registered to do business in the State of California.

Since the company of LSI Title Agency, Inc. is/was not authorized to transact business in California (it is in Illinois and not registered to do business in California), there was no way it could have employed S. Espinoza or act as trustee, Quality Loan Service Corporations' attorney in fact who was asserting itself as a party to this loan.

LSI Title Agency, Inc. is actually a subsidiary of LPS per LPS' own statement filed with the SEC in March, 2011. It is incorporated in Illinois, but is not registered to do business in California. (California Corp. Code §§ 2105, 15909.02, 16959 or 17451.)

LSI Title Agency, Inc. entered into repeated and successive transactions of its business in this state as shown by Nguyen's own chain of title where they are executing documents in the span from 2008 to 2011.

Since, it was not registered to do business in California it had no authority to act as Quality Loan Service Corporation's attorney in fact and verify whether a default had occurred as represented in the document.

Homecomings Financial Network, Inc., LSI Title Agency, Inc. and MERS were not registered to do business in California when these transactions occurred in 2009 and thereafter as to the former, so plaintiff has proven unlawful conduct under the UCL. See *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167; (b) they properly allege unlawful conduct, because MERS is not properly registered to do business in California, so that all of its activities in California are unlawful, see Carter v. Deutsche Bank National Trust Co., No. C09-3033, 2010 WL 424477 (N.D. Cal. Jan. 27, 2010), *Champlaie v. BAC Home Loan Servicing, LP* (E.D.Cal. Oct. 22, 2009), Civil No. S-09-1316, 2009 WL 3429622 and *Bledea v. Indymac Fed. Bank* (E.D.Cal. Feb. 25, 2010), No. CIV S-09-1239, 2010 WL 715255.

This couples with the robo-surrogate signing issue in this case. *Glaski v. Bank of America* (Cal.Ct.App. July 31, 2013) 2013 Cal. App. LEXIS 633

Aurora failed to challenge the allegations that Aurora authorized others to

employ "S. Espinoza"" who had directed multiple other employees to falsely

personate others in their official capacity, and in that assumed character verified,

acknowledged, or proven, in the name of another person, a written instrument,

such as the NOD in this case. This was in violation of California Penal Code §529.

(EOR 2:275-77)

The same act violated Penal Code §470, 115, 132, 186.2 as "Criminal

profiteering activity" which means any act committed or attempted or any threat

made for financial gain or advantage.  It is improbable "S. Espinoza"  verified the

APN, address or nature of default in Illinois, book an airplane flight to Riverside,

California, then drive to the county recorder's office and record the document

before it closed all on the same date, making the information by the individuals

signing them inaccurate, yet a foreclosure was commenced wrongfully as a result

of the inaccurate information. (Document not filed electronically) The defendant

does not deny that it profited from this conduct.  The profit is shown by the

Trustee's Deed Upon Sale "TDUS" in Aurora's name.

Cal Civil Code § 2924(a)(1), does not provide for a judicial action to

determine whether the person initiating the nonjudicial foreclosure process is

authorized to do so. Gomes v. Countrywide Home Loans, Inc. (2011, 4th Dist) 192

Cal App 4th 1149, 121 Cal Rptr 3d 819, 2011 Cal App LEXIS 187. The traditional

rule of agency law, however, is that the party asserting the existence of a principal-

agent relationship has the burden of proving it existed, as well as the scope of the

authority given to the agent by the principal with respect to the transaction upon

which the action is brought. (*California Viking Sprinkler Co. v. Pacific Indem. Co.*

(1963) 213 Cal.App.2d 844, 850.)

Aurora failed to meet its burden in its papers showing a valid and viable

assignment of agency that existed in this case. (Civ. Code, § 2298.) (California

Viking Sprinkler Co. v. Pacific Indemnity Co. (1963) 213 Cal.App.2d 844, 850.)

(See also, Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974, 983 (Kim).

Accordingly the principal has the power to approve the transaction only as it

in fact occurred, not to reconstruct it to suit his present needs." (*Navrides v. Zurich

Ins. Co.* (1971) 5 Cal.3d 698, 704.) A principal 'cannot split the agency transaction

into separate parts, and take the benefits without the burden. (*Ibid.*) (citing

Warshauer v. Bauer Construction Co. (1960) 179 Cal.App.2d 44, 52 [3 Cal.Rptr.

570]).

Therefore, to the extent a trustee were to claim that a robo-signer was an

authorized agent, and if the robo-signer was shown to have committed fraud, the

trustee could not seek to enforce the validity if the foreclosure document while also

escaping an accusation of fraud by claiming lack of knowledge. ("It is well settled

that a principal may ratify the forgery of his signature by his agent. (*Navrides v.

Zurich Ins. Co.*, *supra*, 5 Cal.3d at pp. 703-704.)

Pleadings that a principal may be liable for allegedly fraudulent acts of an agent falsely claiming to be an employee are general enough to encompass theories of either actual or ostensible agency and sufficient to withstand summary judgment. (Kaplan v. Coldwell Banker Residential Affiliates, Inc.(1997) 59 Cal.App.4th 741, 745-747.)

As shown above, LSI Title Agency, Inc. is not registered to do business here as a foreign corporation. Furthermore, the only place it can be found doing business is Illinois. Yet, there are multiple signatures of "S. Espinoza" in California on recorded documents in the Recorders Office that are initiating or concluding a nonjudicial foreclosure. This should be enough to show an unlawful, unfair or deceptive business practice.

Some of the documents being recorded, like Mr. Nguyen's Notice of Default that was executed on January 31, 2011 is unlikely to be executed by the real S. Espinoza sitting in Illinois on the grounds it was recorded on February 1, 2011. The Notice of Default recorded the prior day on January 28, 2011 was executed that same day. Recording a document the same day as executed purportedly in Illinois should raise a genuine issue of material fact that the signature was false and enough for this court so that plaintiff can proceed to trial.

Quality Loan Service Corp. and Defendant's policy/practice of knowingly procuring or offering false or forged instrument to be filed, registered, or recorded

49

in the Riverside County Recorder's Office, which instrument, if genuine, might be filed, registered, or recorded, violated Penal Code §115, in that defendants procured and offered the Notice of Default executed in the name of "S. Espinoza" against the Nguyen's property in order to initiate a fraudulent foreclosure on their property knowing that "S. Espinoza" was employed in Illinois and directing others to fraudulently sign/forge documents in order to initiate foreclosures on homeowners like the Plaintiff, and including the Plaintiff, and consequently, constitutes an unlawful business act or practice within the meaning of Business & Professions Code §17200.

Quality Loan Service Corp.'s policy/practice of employing "S. Espinoza" who directed the fraudulent notarization and filing documents which were then used to initiate foreclosure violates Penal Code §470, in that Quality Loan Service Corp. knew, with the intent to defraud, that the documents were not being signed by the person whose name was being used and as such constituted a forgery, and/or their employees, altered, corrupted, or falsified, the conveyance, or other instrument, constituting a forgery. Defendant Aurora then, with the intent to defraud, uttered, passed or attempted to offer or to pass, as true and genuine, the Notice of Default, Notice of Sale and Trustee's Deed Upon Sale based on the Notice of Default, and consequently, constitutes an unlawful business act or practice within the meaning of Business & Professions Code §17200.

50

Aurora's policy/practice of soliciting, coercing, or influencing other notary publics to perform improper notarial acts knowing that act to be an improper notarial act, including any act required of a notary public under Section 8206, violated Government Code §8214.2 et seq and §8225, in that defendant's employee/agent "Linda Parks,"  "Bonnie Jean (J) Dawson," "Theodore Schultz" and "Jan Walsh" who directed the fraudulent notarization and filing of documents which were then used to conclude foreclosure in this case of the Plaintiff, and consequently, constitutes an unlawful business act or practice within the meaning of Business & Professions Code §17200.

Moreover, these were Aurora employees assigning over loans to Aurora, with no evidence they were authorized agents of the assignor.

It is plaintiffs position that each and every document recorded in the office of the Riverside County Recorder, contains statements known to be false, forged or contains a false acknowledgement of a notary public and plaintiffs allegations of fraud must be accepted as true.  Defendant intended and attempted to use these fraudulent documents to foreclose on plaintiffs and deprive them of their property unlawfully.

Throughout 2009 and 2012 and prior to the action filed herein, constant media attention, various investigations and judicial opinions revealed that Wells engaged in illegal and unethical conduct which included: Fabrication of

51

documents, "Robo-signing," the forging of documents, improper notarization,

violation of security protocols, the concealment of known mistakes from courts,

attorneys and clients, improper accounting of loan payments and violations of

Federal Securities Laws.  As a result of the extensive investigations and

negotiations with the DOJ, and the Attorneys General of 49 states, (including

California,) a Consent Judgment was signed on April 4, 2012 prohibiting Ally

Financial (aka GMAC) and other banks from engaging in the conduct alleged in

this complaint. www.nationalmortgagesettlement.com. (RJN)  Aurora services

loans that belong to the big five lenders, e.g. Wells Fargo, Ally, Bank of America

so there was no need for a separate national mortgage settlement separately naming

Aurora.

     Mr. Nguyen's loan is covered under the Ally/GMAC national mortgage

settlement agreement.  Robo-signing is not a nominal damage of trivial value

according to the April 4, 2012 consent judgment with Ally/GMAC.  The bank

agreed to pay $25 million to the State of Alabama.  Out of that $25 million, $2.5

million was earmarked for the damages sustained as a result of the robo-signing

activity that occurred in Alabama exclusively. (See Agreement page 147).  Like

California, robo-signing activity in Alabama is considered a deceptive act or

practice.

It is undisputed that the Nguyen documents were made from LPS subsidiary, LSI Title Agency, Inc.

Mr. Nguyen could not have reasonably avoided this type of injury.

### 3. A Genuine Issue of Material Fact Exists re: Recording the "Corporate" Assignment of Deed of Trust in order to Conclude a Nonjudicial Foreclosure

The Note had one endorsement on it. It was endorsed by Debra Eshelman as Assistant Secretary of Homecomings Financial Network, Inc. "a Delaware Corporation." It was endorsed in blank and not dated. The "Corporate" Assignment of Deed of trust Aurora used to conclude the foreclosure purported to be executed on behalf of the entity that had already disappeared, which was not executed until November 25, 2009. This was long after Homecomings Financial Network, Inc. ceased to independently exist. MERS was not yet authorized to transact business in California and Homecomings Financial, LLC is not on the document as the succeeding beneficiary. There is no indicia of anything that would make this document trustworthy. It was merely an attempt to foreclose for profit by Aurora at the expense of plaintiff.

The assignment was signed by an Aurora employee, not MERS. Yet it states that the assignment was made from Mortgage Electronic Registrations Systems, Inc. as "nominee" for Homecomings Financial Network, Inc. The "corporation" Homecomings Financial Network, Inc. no longer existed on November 25, 2009

53

when Aurora attempted to assign the rights under the deed of trust and note to itself. Mortgage Electronic Registration Systems, Inc. has no authority to assign a note or deed of trust in its own name (See Depo of MERS representative) and it was not authorized to do business in 2009. Consequently no "corporate" entity existed that was named on the Corporate Assignment of Deed of Trust that could have plausibly assigned any interest to Aurora on November 25, 2009. Although it may be overkill at this point, but Mortgage Electronic Registration Systems, Inc. was not even registered to do business in California in 2009. So even if the assignment struck out the nominee portion, the assignment in California would be invalid. This means that neither Homecomings Financial Network, Inc. nor Mortgage Electronic Registrations Systems, Inc. had the right to foreclose or assign the note and deed of trust to anyone else because at this point in the chain of title, neither had the capacity to do so. Homecomings Financial Network, Inc. dissolved and merged into Homecomings Financial, LLC.

The inadmissible copy of the note only has one endorsement that is undated purporting to be by an entity that disappeared in 2006.

A corporate officer can only be designated by board approval of the corporation. Here, there are no letters from the Corporation demonstrating the person executing these documents was appointed to act as the officer by the Board of Directors. There are no bylaws of the corporation to show who the board can

54

designate as an officer. There are not even any bailment letters, collateral file, powers of attorney, assignments or even postmarked envelopes demonstrating any transfer of any interest in this loan to Aurora. All of these items would exist if Aurora was assigned the note and deed of trust and surely be in their possession.

The lack of evidence that would only be in Aurora's possession and control, is all extraneous indicia of the scheme to defraud and deceive.

As such, the resulting transfer of the property to Aurora as a grantee was void because it was based on the faulty assignment recorded in the Riverside County Recorder's office.  This caused a substantial injury in fact to Mr. Nguyen because this act divested Mr. Nguyen of his title to the property located at 3132 Briar Street in Corona, California, f/k/a his family home.

Here, a substitution of trustee was recorded on December 2, 2008 and executed on October 16, 2008 by Mortgage Electronic Registration Systems, Inc. as nominee for Homecomings Financial Network, Inc.  Again, Homecomings Financial Network, Inc. was no long authorized or registered to do business in California at this time and had since dissolved and merged into Homecomings Financial, LLC in 2006, three years earlier.  Consequently, MERS as nominee for Homecomings Financial Network, Inc., no longer held the beneficial interest under the deed of trust (when it merged with Homecomings Financial, LLC and gave up its name and separate existence).  Because Homecomings Financial Network, Inc.

gave up its right to replace the trustee and initiate foreclosure when it assigned its assets to Homecomings Financial, LLC during the merger or elsewhere, it had no power to initiate foreclosure proceedings, just like Poseidon. Poseidon at 1118.

Civil Code section 2924a(1) requires that for a Substitution of Trustee to be valid, it must be executed and acknowledged by (A) all of the beneficiaries of the Deed of Trust, or their successors in interest. *Poseidon Dev., Inc. v. Woodland Lane Estates, L.L.C.* (2007) 152 Cal.App.4th 1106 which simply was not done here.

### 4. A Genuine Issue of Material Facts Existed re: Foreclosing While Holding the Borrower's Payments in a Suspense Fund Instead of Applying Them to His Loan

Plaintiff incorporates the suspense account analysis above, herein. The use of the suspense account while Mr. Nguyen was attempting to modify his loan only made his ability to cure any default worse.

It was an unfair and deceptive act or practice in violation of section 19 of the Real Estate Settlement Procedures Action of 1974 (12 U.S.C. § 2617) wherein Aurora is liable for "for all actual damages including emotional distress, regardless of whether there was detrimental reliance on the part of the borrower." Mr. Nguyen articulated the emotional distress he endured as a result of Aurora's conduct with the loan modification process. Consequently, this part of the UCL claim should survive the motion for summary judgment, too. See subsection (f).

56

**5. Injury In Fact And Causation Exists**

It is undisputed that the servicer, defendant Aurora Loan Services, LLC caused a trustee's deed upon sale to be recorded on its behalf naming it the "grantee" in the County Recorder's office demonstrating that the plaintiff lost his home as a result of the defendant's conduct. The loss of a home is a substantial consumer injury.

This injury outweighs any countervailing benefits to consumers or competition, in that there are no countervailing benefits to any other party other than the servicer in this case.

This injury could not reasonably have been avoided in this case. Plaintiff has testified at his deposition that he did not know his payments were not being applied to his loan when he was making them to the bank. Auroras statements that plaintiff received did not total up the amount sitting in the suspense account and show that to the plaintiff. Plaintiff testified that at some point in time Aurora failed sending him any statements at all.

**K. Breach of Contract/Promissory Estoppel**

Finally, the trial court erred in dismissing Mr. Nguyen's breach of contract/promissory estoppel claim from the Second Amended Complaint.

On March 18, 2013, in *West*, the California Court of Appeal reversed the trial court's dismissal of the claims for breach and fraud finding that the Temporary

Payment Plan (TPP) required permanent modification under HAMP requirements when it is alleged that the borrower complied with the TPP. (*West v. JPMorgan Chase Bank*, *supra*, 214 Cal.App.4th 780 was published.)

The *West* court's analysis supports appellant's position because it employed the "reasonable interpretation" analysis when determining whether a breach occurred.  In *West,* the bank denied there was a breach because the agreement only required the bank to "reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." *West*.

The court of appeal noted that the Wells Fargo TPP at issue in *Wigod*, in contrast, "expressly provide[d] that Chase Bank would offer a permanent loan modification if she [the borrower] complied with that agreement's terms." *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th 780

Nevertheless, the court of appeal found that although the language in the TPP was couched, "a contract must be interpreted in a way to make it lawful (Civ. Code, § 1643).  To make the Trial Plan Agreement lawful, it must be interpreted to include the provisio imposed by Directive 09-01" under the Making Home Affordable Guidelines. *West* at 780.

Later, the same court, different panel, determined that although the word "shall" or "will" were missing from a FannieMae HomeSaver plan, the servicer

58

had an express duty of good faith when using its discretion to assist the

homeowner to find an alternative to foreclosure. (*Lueras v. BAC Home Loans*

*Servicing, LP*, *supra*, 221 Cal.App.4th 49.)

In between that time, this Circuit similarly concluded that California follows

*Corvello v. Wells Fargo Bank, NA* (9th Cir. Aug. 8, 2013) 2013 U.S. App. LEXIS

16415.

In order to interpret the "Workout" agreement in this instance, the court erred

by giving Aurora boundless discretion as to whether it would act in good faith or

not. Mr. Nguyen fully performed, and Aurora cashed in. The fact that Aurora

claims each check was late is immaterial because by Aurora accepting the

purported late payments, Aurora waived that as a defense. (EOR 2:322-332).

Consequently, this claims was erroneously dismissed, too.

L. **Leave to Amend Should Have Been Granted**

The court denied Plaintiff's requested for leave to amend on the claims

that were dismissed on the Second Amended Complaint. This policy is applied

with "extraordinary liberality." *See Eminence Capital, LLC v. Aspeon, Inc.,* 316

F.3d 1048, 1052 (9th Cir. 2003). To dismiss this complaint without leave was

error because technical pleading errors could have been cured.

M. **Costs Should Be Awarded to Plaintiff**

The court of appeal may award costs to the prevailing appellant if it is in the interest of justice to do so. (*Lavine v. Jessup* (1959) 175 Cal.App.2d 136, 138.)

For the reasons stated above, it would be in the interest of justice to award costs and fees to appellant in line with public policy that foreclosure should be avoided at all costs.

## IV. CONCLUSION

For the reasons stated herein, this Court should reverse the district court's decision in dismissing this complaint by way of summary judgment and 12(b)(6); denying plaintiff's motion for leave to amend; and award costs thereon.

Dated:  December 16, 2013            *Respectfully Submitted,*
                                    LAW OFFICES OF LENORE ALBERT


                                    */s/ Lenore Albert*_____

                                    *LENORE L. ALBERT, ESQ.*
                                    *Counsel for Plaintiffs/Appellants*
                                    *Vu Nguyen*

## STATEMENT OF RELATED CASES

Plaintiffs/Appellants are not aware of the following cases pending in this

Court that would be deemed related pursuant to Ninth Circuit Rule 28-2.6.

Dated:  December 16, 2013                  Respectfully Submitted,
                                          LAW OFFICES OF LENORE ALBERT


                                          */s/ Lenore Albert*_____

                                          *LENORE L. ALBERT, ESQ.*
                                          *Counsel for Plaintiff-Appellant, Vu Nguyen*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with enlargement of brief size permitted by

the Ninth Circuit Rule 28-4.  The brief's type size and type face comply with

Federal Rules of Civil Procedure, rule 32(a)(5) and (6). This brief has 13,680

words not including this Certificate and excluding the portions exempted by the

Federal Rules of Appellate Procedure, rule 32(a)(7)(B)(iii), if applicable.


Dated:  December 16, 2013         Respectfully Submitted,
                                  LAW OFFICES OF LENORE ALBERT


                                  */s/ Lenore Albert*_____
                                  *LENORE L. ALBERT, Esq.*
                                  Counsel for Plaintiff – Appellant, Vu Nguyen

## *PROOF OF SERVICE*

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA  92647.

On December 16, 2013, I served a copy of the following document(s) described as:

**APPELLANT'S OPENING BRIEF**

On the interested parties in this action as follows:
For Defendants Aurora Loan Services, LLC:
Victoria Edwards,  Amy Cizmorris & Justin D Balser
Akerman Senterfitt LLP
Justin.balser@akerman.com
Victoria.edwards@akerman.com

**[X] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

I hereby certify that the following participants were served by U.S. Mail  on (date) **December 16, 2013**.

Attorney General's Office:
Appellate Coordinator
Office of the Attorney General
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

The Hon. George Wu
US District Court
310 N. Spring Street, Crtm 10
Los Angeles, CA 90012-4701

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: December 16, 2013

/s/ Lenore Albert_____
Lenore Albert

63