U.S. COURT OF APPEALS DOCKET NO. 13-55737

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

VU NGUYEN,
*Plaintiff-Appellant,*

v.

AURORA LOAN SERVICES LLC,
*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
BEFORE THE HONORABLE GEORGE H. WU
[DISTRICT COURT NO. EDCV12-00098 GW (DTBX)]

---

## APPELLEE AURORA LOAN SERVICES LLC'S ANSWERING BRIEF

---

Victoria E. Edwards
Melissa L. Cizmorris
**AKERMAN LLP**
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714

Justin D. Balser
**AKERMAN LLP**
725 South Figueroa Street
38th Floor
Los Angeles, California 90017
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

## <u>CORPORATE DISCLOSURE STATEMENT</u>

[Pursuant to FED. R. APP. P. 26.1]

Appellee Aurora Loan Services LLC is a wholly-owned subsidiary of Aurora Commercial Corp. Aurora Commercial Corp. is the successor entity to Aurora Bank FSB. Aurora Commercial Corp. is a wholly-owned subsidiary of Lehman Brothers Bancorp Inc., which is a wholly-owned subsidiary of Lehman Brothers Holdings Inc. No publicly traded entity owns 10% or more of Aurora Commercial Corp.'s stock.

DATED this 13th day of February, 2014

By:  */s/ Victoria E. Edwards*

Victoria E. Edwards
Melissa L. Cizmorris
**AKERMAN LLP**
1400 Wewatta St., Suite 500
Denver, Colorado 80202

Justin D. Balser
**AKERMAN LLP**
725 S. Figueroa Street, 38th Floor
Los Angeles, California 90017

Attorneys for Defendant/Appellee
AURORA LOAN SERVICES LLC

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ................................................................3

STATEMENT OF CASE .................................................................4

STATEMENT OF FACTS ...............................................................7

SUMMARY OF THE ARGUMENT ..................................................11

STANDARDS OF APPELLATE REVIEW .........................................13

      **A.**   A District Court's Ruling on a Motion to Dismiss is Reviewed *De Novo*...............................................................13

      **B.**   A District Court's Ruling Denying Leave to Amend is Reviewed for Abuse of Discretion.....................................13

      **C.**   A District Court's Entry of Summary Judgment is Reviewed *De Novo*...............................................................14

      **D.**   Issues Not Raised Below Should Not Be Considered on Appeal. ......................................................................15

ARGUMENT ...............................................................................17

   I.   NGUYEN'S APPEAL FAILS ON PROCEDURAL GROUNDS...........17

   II.   THE DISTRICT COURT PROPERLY DISMISSED THE BREACH OF GOOD FAITH AND FAIR DEALING CLAIM WITH PREJUDICE BECAUSE THE WORKOUT AGREEMENT DOES NOT OBLIGATE AURORA TO OFFER HIM A LOAN MODIFICATION OR CONSIDER HIM FOR ALL LOSS MITIGATION OPTIONS. ...................................19

   III.   THE DISTRICT COURT PROPERLY DISMISSED NGUYEN'S CLAIM FOR PROMISSORY ESTOPPEL BECAUSE IT WAS NOT REQUIRED TO READ FEDERAL GUIDELINES INTO THE WORKOUT AGREEMENT. ....................................23

   IV.   THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER 15 U.S.C. § 1639F BECAUSE THE STATUTE WAS NOT EFFECTIVE AND BECAUSE AURORA PROPERLY CREDITED NGUYEN'S PAYMENTS. ...........................................25

      **A.**   Aurora Cannot Be Liable for Violations of § 1639f During 2010, Because The Law Had Not Yet Been Enacted. ...................26

      **B.**   Nguyen Did Not Provide Sufficient Evidence to Show He is Entitled to Relief Under § 1639f...................................27

i

      **C.**     Nguyen Did Not Suffer Actionable Damages. ...............................30

**V.**     THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER THE UCL BECAUSE IT IS PREEMPTED BY HOLA. .........................................32

      **A.**     Nguyen's UCL Claims Are Preempted by HOLA. .......................33

      **B.**     The Act Does Not Apply to Contracts That Preceded the Act. .............................................................................................36

      **C.**     The Legislature's Exclusion of Retroactive Language Further Cautions Against Retroactive Application.......................41

      **D.**     Aurora Was Not Required to Have the OCC Make A Preemption Analysis. ..........................................................44

**VI.**    THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER THE UCL BECAUSE NO TRIABLE ISSUE OF DISPUTED MATERIAL FACT EXISTS TO SUPPORT IT. .........................................45

      **A.**     Aurora's Use of A Suspense Account Does Not Violate the UCL..................................................................................47

            **1.**     Aurora is not liable for Payments Made to Homecomings. .......................................................48

            **2.**     Aurora's Use of A Suspense Account is Not Unfair or Deceptive. .................................................49

      **B.**     Aurora's Use of the MERS System is Not Unfair or Deceptive. ..................................................................55

      **C.**     Aurora Did Not Record False or Inaccurate Documents..............57

      **D.**     Nguyen Did Not Establish He Suffered An Injury in Fact............60

CONCLUSION ........................................................................................61

CERTIFICATE OF COMPLIANCE........................................................63

STATEMENT OF RELATED CASES .....................................................64

CERTIFICATE OF SERVICE ................................................................65

## TABLE OF AUTHORITIES

**Cases**

*Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218 (2011) ......................................24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................15

*Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551 (9th Cir. 2002).........................33

*Barnett v. Bank of Marion Cnty., N.A.*, 517 U.S. 25 (1996)...................................36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................13

*Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399 (N.D. Cal. 2009)...........................35

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230 (2011)......................61

*Boston Mut. Ins. v. Murphree*, 242 F.3d 899 (9th Cir. 2001) ..................................14

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)........................................41

*Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir. 2000)....................31

*Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ... 13, 14

*Cal. Viking Sprinkler Co. v. Pac. Indemnity Co.*, 213 Cal. App. 2d 844 (1963).....58

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992)
......................................................................................................................19

*Carter v. Deutsche Bank Nat'l Trust Co.*, No. C09-3033, 2010 WL 424477 (N.D.
Cal. Jan. 27, 2010)........................................................................................55

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................ 14, 59

*Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).............45

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000).............2

*Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, C 10-3883 SBA, 2012 WL
6652442 (N.D. Cal. Dec. 20. 2012)..............................................................37

*Coleman v. Quaker Oats*, 232 F.3d 1271 (9th Cir. 2000) ......................................18

*Copeland-Turner v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1132 (D. Or. 2011)
......................................................................................................................37

*Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013) .......................24

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201 (9th Cir. 2008) ........................14

*Fisher v. Allis-Chalmers Corp. Prod. Liab. Trust*, 95 Cal. App. 4th 1182 (2002) .48

*Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002)....................34

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002)...................................46

*Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2012 WL 4742815
  (N.D. Cal. Oct. 3, 2012) ...................................................................................37

*Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008) ........................................... 47, 60

*In re Am. W. Airlines, Inc.*, 217 F.3d 1161 (9th Cir. 2000) ....................................15

*In re Checking Account Overdraft Lit.*, 880 F. Supp. 2d 1290 (S.D. Fla. 2012).....36

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ................................47

*In re Gorshtein*, 285 B.R. 118 (Bankr. S.D.N.Y. 2002) .................................... 50, 51

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .....................................................61

*Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 414 F. App'x 61 (9th Cir. 2011)......13

*Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181 (D. Mass. 2006) .............50

*Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (9th Cir. 2011) ..... 13, 14

*King Cnty. v. Rasmussen*, 299 F.3d 1077 (9th Cir. 2002) ................................ 13, 15

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)...................................... 42, 43

*Lueras v. BAC Home Loans Servicing LP*, 221 Cal. App. 4th 49 (2013) .. 21, 22, 24

*Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899 (9th Cir. 2003) .............................15

*Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002) .........................15

*Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975 (9th Cir. 2006)...........................14

*Molosky v. Washington Mut. Inc.*, 664 F.3d 109 (6th Cir. 2011) ...........................37

*Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009)........ 46, 54

*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735 (1980) ...........................46

*Murillo v. Aurora Loan Servs., LLC*, No. C 09–00503 JW, 2009 WL 2160579
  (N.D. Cal. July 17, 2009) ..................................................................................34

*Myers v. Merrill Lynch & Co.*, 249 F.3d 1087 (9th Cir. 2001) ...............................16

*Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008)............. 19, 47

*O'Guinn v. Lovelock Correctional Ctr.*, 502 F.3d 1056 (9th Cir. 2007) .......... 15, 23

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001)..............32

*Parks v. MBNA Am. Bank, N.A.*, 54 Cal. 4th 376 (2012) ........................................45

*Perlas v. Mortg. Elec. Registration Sys.*, No. C 09-4500 CRB, 2010 WL 3079262
 (N.D. Cal. Aug. 6, 2010) ...................................................................................55

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)....................................47

*Poindexter v. Wachovia Mortg. Corp.*, 851 F. Supp. 2d 121 (D.D.C. 2012) .........37

*Poseidon Dev. Inc. v. Woodland Lane Estates, LLC,* 152 Cal. App. 4th 1106 (2007)
 ...............................................................................................................................59

*Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999)....51

*Ray v. Alad Corp.,* 19 Cal. 3d 22 (1977) ................................................................48

*Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861 (4th Cir. 2001)......................41

*Rice v. Santa Fe Elevator*, 331 U.S. 218 (1947)....................................................34

*Ronemus v. FTB Mortg. Servs.* (*In re Ronemus*), 201 B.R. 458 (Bankr. N.D. Tex.
 1996) ............................................................................................................... 49, 50

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010)...................................45

*Settle v. World Savings Bank, F.S.B.*, No. ED CV 11–00800 MMM (DTBx), 2012
 WL 6176905 (C.D. Cal. Jan. 11, 2012)..............................................................37

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)..................... passim

*Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75 (D. Mass. 2012) ...........................37

*State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093 (1996) .............46

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44 (2002)...20

*Thompson v. Paul*, 547 F.3d 1055 (9th Cir. 2008) ........................................... 13, 14

*U.S. v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001) ............................................ 16, 18

*U.S. v. Etsitty*, 130 F.3d 420 (9th Cir. 1997) .................................................... 16, 18

*U.S. v. Martinez-Mercado*, 888 F.2d 1484 (5th Cir. 1989) ....................................18

*U.S. v. McDonald*, 178 F. App'x 643 (9th Cir. 2006)................................................16

*United States v. Shumway*, 199 F.3d 1093 (9th Cir. 1999)......................................14

*Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372 (9th Cir. 1996)........................................13

*Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002) ...... 46, 54

*Watters v. Wachovia Bank, NA.*, 550 U.S. 1 (2007).................................................33

*West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780 (2013) ..............................24

*Williams v. Block*, 217 F.3d 848 (9th Cir. 2000) .....................................................17

*Workman v. GMAC Mortg. LLC* (*In re Workman*), 392 B.R. 189 (Bankr. D.S.C.
    2007).............................................................................................................. 49, 50

## Statutes

12 U.S.C. § 5551 .................................................................................................. 38, 39

12 U.S.C. § 5553................................................................................................ 36, 38, 40

15 U.S.C. § 1400..........................................................................................................26

15 U.S.C. § 1639f(a) ...................................................................................................28

15 U.S.C. § 1640 (a)(4).................................................................................................31

15 U.S.C. § 1640(a) .....................................................................................................31

*Bus. & Prof. Code* § 17200 .......................................................................................45

*Bus. & Prof. Code* § 17204 .......................................................................................47

Cal. *Corp. Code* § 191(a)...........................................................................................55

Cal. *Corp. Code* § 2105(a).........................................................................................55

Cal. *Corp. Code* § 2203(a)-(c) .............................................................................. 55, 56

## Other Authorities

Dodd-Frank Act Implementation, 76 Fed. Reg. 43,549 (July 21, 2011).................39

H.R. 4173, 111th Cong. (2009)...................................................................................41

H.R. 4173, 111th Cong. (2010)...................................................................................41

S.B. 3127, 111th Cong. (2009) ................................................................41

**Rules**

12 C.F.R. § 559.2 ....................................................................................33

12 C.F.R. § 559.3(n)(1) ...........................................................................33

12 C.F.R. § 560.2(a) ................................................................................33

12 C.F.R. § 560.2(b)(1)-(13) ...................................................................33

FED. R. APP. P. 28(a)(7) ...........................................................................17

FED. R. APP. P. 28(e) ...............................................................................17

FED. R. CIV. P. 56(c) ................................................................................52

FED. R. CIV. P. 56(c)(1) ...........................................................................15

Final Rule at 43557 .................................................................................41

Mortgage Servicing Rules Under the Truth in Lending Act, 78 FR 10901 (Feb. 14,
    2013) ..................................................................................................27

## JURISDICTIONAL STATEMENT

Appellant Vu Nguyen (**Nguyen**) filed a complaint in the Riverside County Superior Court on December 20, 2011, alleging claims for (1) negligence; (2) breach of contract; (3) promissory estoppel; (4) breach of good faith and fair dealing; (5) fraud; (6) wrongful foreclosure; (7) fraud; and (8) unlawful/unfair practices. (Aplee. E.R. at 239-272.[1]) Aurora removed the action to the United States District Court for the Central District of California (**District Court**) on January 20, 2012. (*Id.* at 233-238.) On February 27, 2012, Nguyen filed a First Amended Complaint (**FAC**), bringing a new claim under 15 U.S.C. § 1639f. (*Id.* at 132-231.) After the District Court dismissed Nguyen's FAC, Nguyen filed a Second Amended Complaint (**SAC**), bringing claims for (1) violations of 15 U.S.C. § 1639f; (2) promissory estoppel; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) fraud; and (6) violations of Cal. *Bus. & Prof. Code* § 17200 (**UCL**). (Aplt. E.R. at 349-89.)

Based on the parties' citizenship, the amount in controversy, and Nguyen's claim under 15 U.S.C. § 1639f, the District Court had jurisdiction over this matter under both 28 U.S.C. §§ 1331 and 1332. First, the District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely

---

[1] Aurora uses the following naming convention when referring to the Excerpts of Record. The convention (Aplt. E.R. at NN) refers to those Excerpts of Record filed by Nguyen and (Aplee. E.R. at NN) refers to those filed by Aurora.

diverse and the amount in controversy was over $75,000.00. (*See* Aplee. E.R. at 234-35.)

Second, once Nguyen brought a claim under 15 U.S.C. § 1639f, the District Court had jurisdiction over the claim pursuant to 15 U.S.C. § 1640(e). The District Court exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and therefore also had jurisdiction over Nguyen's state law claims. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000).

On April 8, 2013, District Court Judge George H. Wu issued an Order granting Aurora's motion for summary judgment. (Aplt. E.R. at 2-5.) This ruling disposed of all Nguyen's claims. (*Id.*) The District Court entered judgment in favor of Aurora on April 11, 2013. (*Id.* at 1-2.) Pursuant to FED. R. CIV. P. 54, this judgment was final on April 11, 2013.

Nguyen filed a notice of appeal on May 1, 2013. (*Id.* at 48-51.) Nguyen's notice was filed within thirty-days of judgment, as required by FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

1.     Did the District Court properly dismiss Nguyen's claim for breach of the covenant of good faith and fair dealing with prejudice where the Workout Agreement at issue did not obligate Aurora to consider Nguyen for loss mitigation options?

2.     Did the District Court properly dismiss Nguyen's promissory estoppel claim with prejudice where the commercial, in-house Workout Agreement could not be fairly read to incorporate federal guidelines from the Housing Made Affordable Program (**HAMP**) or the HomeSaver Forbearance program by Fannie Mae that would constitute a promise by Aurora to provide Nguyen with a loan modification after he made all the required payments?

3.     Did the District Court properly grant summary judgment in favor of Aurora on Nguyen's claim for violations of 15 U.S.C. § 1639f where the statute was not effective until over three years after the alleged violations took place and where there is no evidence to show Aurora violated the statute even if it was effective?

4.     Did the District Court properly find Nguyen's claims under the UCL were preempted by the Home Owner's Loan Act (**HOLA**), and if not, was the District Court's grant of summary judgment otherwise proper because there was no evidence to show Aurora engaged in any unfair or deceptive business practices?

## STATEMENT OF CASE

Nguyen appeals the District Court's decision to dismiss his claims for promissory estoppel and breach of the covenant of good faith and fair dealing without leave to amend. He also appeals the District Court's grant of summary judgment in favor of Aurora as to his claims for violations of 15 U.S.C. § 1639f and the UCL.

The current appeal is from the third lawsuit Nguyen has filed against Aurora concerning a loan modification review and the alleged wrongful foreclosure of his property. The facts of the SAC pick up after Nguyen received a loan modification reducing his mortgage loan payments and converting his adjustable rate loan into a lower, fixed, step-rate loan (the **Modification**). Despite the Modification, Nguyen's financial troubles caused him to stop making mortgage payments and file for Chapter 7 bankruptcy.

After receiving a bankruptcy discharge, Nguyen asked Aurora to consider him for yet another loan modification. Aurora offered him a forbearance agreement (**Workout Agreement**) as a means to cure his arrearage and postpone foreclosure. Nguyen was late on every payment under the Workout Agreement, and Aurora ultimately foreclosed on the property over the course of the next year. Nguyen then brought this lawsuit, claiming he should have received another loan modification; that his payments were incorrectly applied to his loan; and that the

4

foreclosure—which occurred between his first and second lawsuits—was wrongful. Nguyen's SAC, the operative complaint, brought claims for (1) violations of 15 U.S.C. § 1639f; (2) promissory estoppel; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) fraud; and violations of the UCL. Aurora moved to dismiss Nguyen's claims and was successful in dismissing his claims for promissory estoppel, breach of the covenant of good faith and fair dealing, and the two fraud claims with prejudice.

Aurora moved for summary judgment on Nguyen's remaining claims at the close of discovery. Following several rounds of supplemental briefing and an open invitation to the parties to proffer all evidence to support their claims, Judge Wu granted summary judgment in favor of Aurora.

On appeal, Nguyen argues for the first time that his claim for the breach of the covenant of good faith and fair dealing and promissory estoppel, should not have been dismissed because the District Court failed to read federal HAMP and Fannie Mae regulations into his in-house, non-HAMP, non-GSE Workout Agreement with Aurora to impose an extra-contractual duty to give him another loan modification. Unsurprisingly, the problem with Nguyen's argument is that Fannie Mae did not own his loan and the Workout Agreement was not governed by HAMP. Nguyen offers no basis in law for this proposition, and there is nothing in

5

the record to support this finding. Nguyen never made this argument at the District Court level.

Nguyen also argues on appeal his claim under 15 U.S.C. § 1639f was proper because the statute was effective at the time of the alleged wrongdoings. This argument is belied by the fact the statute was not effective until January 10, 2014, over three years after the alleged wrongdoings took place. Even assuming the statute was effective, Nguyen points to no evidence in the record to establish Aurora failed to properly credit any payments he made to his account.

Last, Nguyen argues the District Court inappropriately found the claim under the UCL was preempted by HOLA because Congress has since passed the Dodd-Frank Act, which effectively replaced HOLA. However, Nguyen has not identified any cogent basis for finding the Dodd-Frank Act—passed well after the acts at issue here—could or should be applied retroactively here. Moreover, even assuming HOLA does not preempt Nguyen's claim under the UCL, the undisputed evidence makes clear Aurora did not engage in any unfair or deceptive business practices related to Nguyen's loan.

This Court should affirm the District Court's findings because they were based on the proper legal standard and findings.

## STATEMENT OF FACTS

On or about December 6, 2005, Nguyen obtained a $520,000 refinance loan (the **loan**) from Homecomings Financial Network, Inc. (**Homecomings**). (Aplt. E.R. at 352.) The loan was secured by a deed of trust on real property located at 13132 Briar Street, Corona, California (the **property**), which was recorded with the Riverside County Recorder's Office. (*Id.* at 274-96.)

Homecomings Financial, LLC serviced Nguyen's loan until April 2008, when servicing transferred to Aurora. (*Id.* at 252.) Nguyen made several loan payments after the transfer, but ultimately defaulted. (*Id.* at 298-304.) On December 2, 2008, MERS—as the beneficiary under the deed of trust—substituted Quality Loan Services Corporation (**Quality**) as the trustee of the deed of trust (**Substitution**). (Aplee. E.R. at 127-29.) MERS assigned the beneficial interest in the deed of trust to Aurora on November 25, 2009 (**Assignment**). (*Id.* 130-31.).

Earlier, in February 2009, Nguyen entered into a loan modification agreement with Aurora (**Loan Modification**). (Aplt. E.R. at 298-315.) The Loan Modification obligated Nguyen to make interest-only payments of $999.18 and payments toward escrow from April 1, 2009 to March 1, 2012. (*Id.* at 307-15.) Nguyen made sporadic, inconsistent payments,. (*See id.* at 298-305.)

On the advice of counsel, Nguyen filed for Chapter 7 bankruptcy protection in October 2009, following an adverse judgment on a consumer credit card

debt. (*Id.* at 354.) Nguyen had already defaulted on the Loan Modification and did not make any loan payments during the bankruptcy. (*Id.* at 298-305.) Following his discharge Aurora offered Nguyen a Workout Agreement as a way to work toward curing his arrearage. (*Id.* at 307-15.) Under the Workout Agreement, Nguyen was required to make six payments of $1,557.73 on or before March 15, 2010; April 15, 2010; May 15, 2010; June 15, 2010; July 15, 2010; and August 15, 2010. (*Id.*)

Nguyen made payments under the Workout Agreement: (1) $1,557.73 on or about March 26, 2010 (the **March payment**); (2) $1,557.73 on or about April 20, 2010 (the **April payment**); (3) $1,557.73 on or about May 19, 2010 (the **May payment**); (4) $1,557.73 on or about June 29, 2010 (the **June payment**); (5) $1,557.73 on or about July 28, 2010 (the **July payment**); and (5) $1,557.00 on or about September 2, 2010 (the **August/September payment**). (*Id.* at 360-62.)

Nguyen's March payment was considered a "partial" payment because a full payment under the terms of his Loan Modification, in March 2010 was $1,613.64. (Aplt. E.R. at 254.) This amount consisted of interest-only payments of $998.63 plus $615.01 in escrow payments, which fluctuated year-to-year according to property value assessments. (*Id.*) Because the March payment was a partial payment it was applied to the loan's suspense account. (*Id.* at 255.) Despite the fact the March payment was late, no late fee was assessed against Nguyen's

account, nor did he incur any additional fees or costs when his partial payment was placed in a suspense account. (*Id.*)

Nguyen's April payment was also a partial payment under the Loan Modification, but Aurora removed $55.91 from the suspense account to allocate toward his April payment of interest and escrow on April 19, 2010. (*Id.* at 255, 304.) Again Nguyen was not charged a late fee, nor did he incur any fees related to the April payment, although it was late. (*Id.* at 255.)

Similarly, Nguyen's May, June, July, and August/September payments were applied toward interest and escrow on May 18, 2010; June 28, 2010; July 26, 2010; and August 30, 2010, respectively, each borrowing from suspense to constitute a full payment(*Id.* at 255-56, 298-304.) Although Nguyen incurred two late fees associated with this June and July payments, both fees were assessed due to his failure to make his payments in a timely manner, not due to any delay in processing. (*Id.*)

Quality recommenced the foreclosure process in January 2011 by recording of a new notice of default. (Aplee. E.R. at 122-26.) Due to an error, the notice of default was rescinded four days later. (*Id.* at 120-21.) A new notice of default was immediately recorded (*Id.* at 115-19.) Quality recorded a notice of trustee's sale in May 2011. (*Id.* at 110-12.) Aurora purchased the property at the trustee's sale conducted in October 2011. (*Id.* at 110-12)

9

This action followed on December 20, 2011, in the Riverside County Superior Court. (*Id.* at 239-72.) Aurora removed the action the District Court on January 20, 2012. (*Id.* at 233-28.) On February 27, 2012, Nguyen filed a FAC. (*Id.* at 132-232.) After the District Court dismissed Nguyen's FAC, Nguyen filed the SAC, bringing claims for (1) violations of 15 U.S.C. § 1639f; (2) promissory estoppel; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) fraud; and (6) violations of the UCL. (Aplt. E.R. at 349-89.) Aurora again moved to dismiss and successfully dismissed Nguyen's claims for promissory estoppel, breach of the covenant of good faith and fair dealing, and the two fraud claims with prejudice.

At the close of discovery, Aurora moved for summary judgment to Nguyen's remaining claims . Following several rounds of supplemental briefing and an open invitation to the parties to proffer all evidence to support their claims, Judge Wu granted summary judgment in favor of Aurora.

10

## SUMMARY OF THE ARGUMENT

Nguyen asks this Court to reverse the District Court's rulings on four of his claims, in the absence of any law and without citation to any facts in the record. Nguyen's arguments and new theories of liability, asserted without legal support or citation to the record, should not be considered and warrant dismissal of this appeal.

Nguyen first argues the District Court erred in dismissing his claims for breach of the covenant of good faith and fair dealing and promissory estoppel because it failed to read federal guideline into the Workout Agreement, pursuant to HAMP and the Fannie Mae HomeSaver Forbearance program. Nguyen never made this argument below and the Court should not consider it for this reason alone. Moreover, the case law Nguyen cites for this proposition does not support such a holding. The key distinction between the cases cited by Nguyen and the facts of this case is simple—the Workout Agreement was a commercial, in-house agreement offered by Aurora, not within any federal loss mitigation program.

Nguyen also argues the District Court erred in granting summary judgment in favor of Aurora as to his 15 U.S.C. § 1639f claim because not only was the statute in effect at the time of the wrongdoing, but because Aurora clearly violated it by placing Nguyen's March through September payments into a suspense account. The District Court correctly found § 1639f was not *effective* at all

11

relevant times. in fact, it was not effective until January 10, 2014. Further, Nguyen cites to no evidence in the record supporting his allegation that Aurora misapplied his payments. The evidence is clear Aurora did not improperly place any of Nguyen's payments into suspense, but instead properly credited his account with full payments as they were made.

Last, Nguyen argues the District Court erred in granting summary judgment in favor of Aurora as to his claim under the UCL when it found the UCL was preempted by HOLA. Not only is it clear HOLA preempts Nguyen's claims under the UCL, but even if it did not, the undisputed evidence establishes Aurora's business practices were proper. Nguyen argues Aurora engaged in business practices that unfairly or deceptively (1) placed Nguyen's payments into suspense, (2) utilized the MERS system, and (3) resulted in the recording of forged documents. The evidence, however, establishes that not only was Aurora's use of a suspense account not unfair or deceptive, but that Aurora did not utilize the MERS system in an unfair or deceptive manner nor did it record forged documents.

As a procedural note, Nguyen has not appealed the decision to dismiss his fraud claims and therefore he has abandoned those claims on appeal.

## STANDARDS OF APPELLATE REVIEW

**A.    A District Court's Ruling on a Motion to Dismiss is Reviewed *De Novo*.**

This Court reviews denials of motions to dismiss for failure to state a claim *de novo*. *See*, *e.g.*, *King Cnty. v. Rasmussen*, 299 F.3d 1077, 1088 (9th Cir. 2002); *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1374 (9th Cir. 1996). The Court must review the SAC to determine whether it alleges "sufficient facts 'to state a claim to relief that is plausible on its face.'" *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 414 F. App'x 61, 61 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

The Court may affirm the dismissal based on "any ground supported by the record," including grounds that were raised but not decided by the District Court. *See Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008) (cited authority omitted); *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 421 (9th Cir. 2011).

**B.    A District Court's Ruling Denying Leave to Amend is Reviewed for Abuse of Discretion.**

The Court reviews a motion for leave to amend for abuse of discretion. *Cafasso*, 637 F.3d at 1058. "The district court's discretion to deny leave to amend

13

is particularly broad where plaintiff has previously amended the complaint." *Id.* (citations omitted);

### C.  A District Court's Entry of Summary Judgment is Reviewed *De Novo*.

This Court reviews a judgment entered pursuant to FED. R. CIV. P. 56 *de novo*. *Boston Mut. Ins. v. Murphree*, 242 F.3d 899, 902 (9th Cir. 2001).  When reviewing a judgment *de novo*, the Court may affirm the dismissal based on "any ground supported by the record," including grounds that were raised but not decided by the District Court.  *See Thompson*, 547 F.3d at 1058-59; *Johnson*, 635 F.3d at, 421 .

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  rule 56(c).  Summary judgment is inappropriate when a reasonable finder of fact, drawing all inferences in favor of the non-moving party, could return a verdict in  its favor.  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

The moving party bears the initial burden of establishing there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  Once the moving

14

party meets its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986).  Facts must be supported by citations to the record.  FED. R. CIV. P. 56(c)(1).  "[T]he substantive law will identify which facts are material" for purposes of ruling on a summary judgment motion. *Anderson*, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*.  A dispute over a material fact is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id* at 248;.

### D.    Issues Not Raised Below Should Not Be Considered on Appeal.

Whether the Court has subject matter jurisdiction over a dispute will be reviewed *de novo*.  *See King Cnty.*, 299 F.3d at 1088; *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002).  The Court "may affirm on any ground fairly presented by the record."  *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003).  Arguments not raised below are waived on appeal.  *O'Guinn v. Lovelock Correctional Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007).

Although the Court may consider issues or law raised for the first time on appeal, *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000), it is unusual for it to do so before the District Court has had an opportunity to consider

it and to develop the record. *See U.S. v. Bushyhead*, 270 F.3d 905, 910 n.2 (9th Cir. 2001); *see also U.S. v. McDonald*, 178 F. App'x 643, 645 (9th Cir. 2006) (declining to consider issue raised for first time on appeal); *Myers v. Merrill Lynch & Co.*, 249 F.3d 1087, 1088 (9th Cir. 2001); *U.S. v. Etsitty*, 130 F.3d 420, 425 (9th Cir. 1997) ("In the absence of factual support in the record, assertions made in briefs simply do not suffice.").

## ARGUMENT

## I.  NGUYEN'S APPEAL FAILS ON PROCEDURAL GROUNDS.

The fatal flaws in Nguyen's appeal are best captured by his failure to properly cite to the record for _any_ of his arguments.  This alone is grounds for denial of his appeal.  The primary role of appellate courts is to review the decisions of the lower court, not to decide issues in the first instance.  _Williams v. Block_, 217 F.3d 848 (9th Cir. 2000).  This is done by reviewing the evidence, objections and legal theories presented below.

FED. R. APP. P. 28(a)(7) requires the appellant's brief to contain a statement of facts "with appropriate references to the record."  Rule 28(e) further requires that these references to the record  be to "the pages of the appendix."

Nguyen's Opening Brief does not comply with Rule 28.  Not only does it not even have a "Statement of the Facts" section,  but "Statement of the Case" largely cites to the SAC and not to pages in the appendix as Rule 28(e) requires.  Such disregard for the appellate rules warrants denial of this appeal.  "It is not the function of the Court of Appeals to comb through the record for possible error, but rather it is counsel's responsibility to point out distinctly and specifically the precise matters complained of, with appropriate citations to the pages in the record where the matters appear."  _U.S. v. Martinez-Mercado_, 888 F.2d 1484, 1492 (5th

Cir. 1989). "In the absence of factual support in the record, assertions made in briefs simply do not suffice." *Etsitty*, 130 F.3d at 425.

The new theory Nguyen espouses in support of his claims for breach of good faith and fair dealing and promissory estoppel also fails on procedural grounds. He argues for the first time on appeal the District Court erred by failing to impute federal loss mitigation guidelines into the Workout Agreement (see opening brief). This argument was never raised below, depriving Aurora the opportunity to brief it and the District Court the opportunity to consider it and develop the record. By failing to make this argument, he has waived the right to argue it on appeal. *See Bushyhead*, 270 F.3d at 910.

Nguyen also asserts factual bases for relief not properly raised below. Specifically, Nguyen's SAC does not allege Aurora violated the UCL for payments made prior to March 2010, nor does it allege violations of the UCL for falsifying or forging of recorded documents, or MERS's ability to execute documents although not licensed in California. (*See* Aplt. E.R. at 372-78.) Because these legal arguments were not properly raised below, they cannot be raised now on appeal. *See Coleman v. Quaker Oats*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

## II. THE DISTRICT COURT PROPERLY DISMISSED THE BREACH OF GOOD FAITH AND FAIR DEALING CLAIM WITH PREJUDICE BECAUSE THE WORKOUT AGREEMENT DOES NOT OBLIGATE AURORA TO OFFER HIM A LOAN MODIFICATION OR CONSIDER HIM FOR ALL LOSS MITIGATION OPTIONS.

Nguyen appeals the District Court's dismissal of his breach of the implied covenant of good faith and fair dealing claim. (*See* Opening Brief.)[2] He alleges Aurora breached the covenant of good faith and fair dealing by (1) not curing the arrearage on his loan after Nguyen made all six payments under the Workout Agreement and by (2) not modifying his loan after he made all six payments . (Aplt. E.R. at 366.)

"A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege that: (1) a contract existed; (2) the plaintiff did all, or substantially all, of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

---

[2] Nguyen does not appeal the dismissal of his claims for fraud. He has therefore waived his ability to challenge the District Court's ruling on these grounds and Aurora will not address the propriety of dismissal as to these claims. *See Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("Because the Navajo Plaintiffs ... failed to appeal the district court's denial of their motion to amend the complaint to add this NEPA claim, the claim is waived on appeal.")

The implied covenant cannot create, expand or contradict contractual terms, no matter how unfair. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44(2002).

First, Nguyen's claim fails because the terms he wishes to enforce are not in the Workout Agreement itself, nor are they implied. (*See* Aplt. E.R. at 381-89.) Nguyen now alleges Aurora had a duty to provide him with a loan modification after he made all six installment payments. (*Id*. at 366-67.) To the contrary, the Workout Agreement is clear Nguyen was not guaranteed a loan modification by virtue of timely making all six payments. (*Id*. at 388-89.)

Even if such a term could be implied, Nguyen admits he failed to make payments in a timely manner and did **not** comply with his contractual obligations. The Workout Agreement obligated Nguyen to make six monthly payments of $1,557.73, beginning on March 15, 2010. (*Id*. at 388) Nguyen admits he did not make a complete first payment until March 26, 2010. (*Id*. at 360 ) Nguyen similarly alleges each subsequent payment was made after the 15th of the following five months. (*Id*. at 360-62 ¶ 75.) Even assuming Aurora was required to provide Nguyen with a loan modification, Aurora's "conditions for performance" never occurred because he did not meet his obligation to make timely payments.

Nguyen also argues now, for the first time, Aurora had a "contractual duty to work *with* [plaintiff] to *identify* the feasibility of, and implement, a foreclosure

prevention *alternative*, and to do so in good faith." (Opening Brief at 11.) Even assuming this argument is properly before this Court, it fails as a matter of law. In support of his argument, Nguyen points to *Lueras v. BAC Home Loans Servicing LP*, 221 Cal. App. 4th 49 (2013). *Lueras* is inapplicable here because unlike in *Lueras*, Nguyen's Workout Agreement was not made pursuant to a federal loss mitigation program.

In *Lueras*, the borrower was offered a HomeSaver Forbearance under a program implemented by Fannie Mae. *Id.* at 57. The stated goal of the Fannie Mae program was to "permit the servicer to work with the borrower to identify the feasibility of, and implement, a more permanent foreclosure prevention alternative." *Id.* The forbearance itself further stated that during the forbearance period, the servicer was required to determine whether the borrower qualified for additional loss mitigation assistance. *Id.* The borrower made each payment under the HomeSaver Forbearance and submitted documentation to be considered for a HAMP modification. (*Id. at 58*) However, his servicer did not work with him explore a more permanent loss mitigation option. *Id.* The borrower brought suit arguing that the servicer breached the forbearance by failing to offer him a loan modification or other loss mitigation assistance. *Id.* at 70. The Court read provisions from the program into the HomeSaver forbearance to find the servicer

was required to work to identify the feasibility of, and implement, a foreclosure prevention alternative, and to do so in good faith. *Id.* at 72-76.

Nguyen asks this Court to read the same obligation into the Workout Agreement. (Opening Brief at 11.) The Workout Agreement here stands in marked contrast to the HomeSaver Forbearance in *Lueras*, in that the Workout Agreement accepted by Nguyen was not offered pursuant to the Fannie Mae HomeSaver program . (*See* Aplt. E.R. at 381-89.) This distinction is important. It is *only* because the forbearance in *Lueras* was offered under the Fannie Mae program that the terms of that program were read into the agreement itself. *Lueras*, 221 Cal. App. 4th at 72-76. Nguyen has stated absolutely no legal basis to read the guidelines of the Fannie Mae HomeSaver program into the Workout Agreement between Aurora and Nguyen. (*See* Opening Brief at 11-12.)

Further, Nguyen has failed to point to a single provision of the Workout Agreement that could be fairly read to obligate Aurora to identify a loss mitigation alternative to foreclosure for Nguyen. (Opening Brief at 11.) Such duty does not exist outside of a Fannie Mae HomeSaver program, of which Nguyen was not a part.

<u>Second</u>, Nguyen has not stated any facts to support the allegation Aurora unfairly interfered with his right to receive the benefits of the Workout Agreement. Nguyen received the benefits he bargained for. Aurora did not foreclose on the

property during the pendency of the Workout Agreement, which is the exact benefit for which Nguyen bargained. (Aplt. E.R. at 381-89.) The workout did not require Aurora to modify Nguyen's loan again, nor did it require Aurora to find Nguyen a permanent loss mitigation alternative. (*Id.*) In fact, permits Aurora to not to consider Nguyen for a loss mitigation alternative at all. (*Id.* at 389.)

Because Nguyen has shown he cannot allege any set of facts to save his claim, the District Court properly dismissed this claim with prejudice.

## III. THE DISTRICT COURT PROPERLY DISMISSED NGUYEN'S CLAIM FOR PROMISSORY ESTOPPEL BECAUSE IT WAS NOT REQUIRED TO READ FEDERAL GUIDELINES INTO THE WORKOUT AGREEMENT.

Nguyen appeals the District Court's dismissal of his claim for promissory estoppel because it failed to read federal guidelines into his Workout Agreement. This argument was not raised below and cannot be properly brought on appeal. *See O'Guinn*, 502 F.3d at 1063 n.3.

Even presuming Nguyen can bring such allegations for the first time on appeal, his claim fails for the same reasons his breach of the covenant of good faith and fair dealing claims failed: the Workout Agreement was not part of the HAMP program or the Fannie Mae HomeSaver program, and therefore Aurora could not have promised Nguyen it would comply with those guidelines. The elements of a claim for promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance

23

must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011). Nguyen has not alleged a promise clear and unambiguous in its terms, or that Aurora failed to adhere to its contractual promises.

Nguyen's claim first fails because he has not identified a clear and ambiguous promise. Nguyen now argues that under *West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780 (2013); *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013); and *Lueras*, 221 Cal. App. 4th at 49, the guidelines of the HAMP and Fannie Mae HomeSaver forbearance programs should be read into the Workout Agreement as an implied promise by Aurora to modify Nguyen's loan, or at least to work with him in good faith. (Opening Brief at 57-59.)

This contention fails, though, because the Workout Agreement was not a temporary payment plan contract under HAMP, nor was it a forbearance agreement under Fannie Mae's HomeSaver program. (*See* Aplt. E.R. at 381-89.) Instead, Nguyen entered into a contract under Aurora's corporate, in-house forbearance program. (*Id.*) The terms of the Workout Agreement explicitly notified Nguyen he would not be granted a loan modification by virtue of making all the payments under the Workout Agreement. (*Id.* at 389.) Nowhere is Aurora obligated to consider Nguyen for additional loss mitigation options at all, much less in good faith. (*Id.*) Moreover, the Workout Agreement does <u>not</u> reference

24

HAMP or the Fannie Mae HomeSaver program. (*Id.* at 381-89.) Thus, there is no basis to find Aurora made any implied promises thereunder.

Even assuming Aurora made a promise clear enough to be enforceable, Nguyen fails to show how Aurora failed to meet its promise. Nguyen alleges that in order to obtain a modification, he had to make each payment under the Workout Agreement. (*Id.* at 363.) Although Nguyen alleges he eventually made each payment under the Workout Agreement, **not a single one was timely made**. The Workout Agreement is clear it is of no effect unless Aurora received the first payment by the "Return Date" of March 15, 2010. (*Id.* at 388.) Nguyen recognized the importance of timely payments under the Workout Agreement when he alleges it was offered so he could demonstrate his ability and willingness to make reduced monthly payments." (*Id.* at 367.) His failure to make those payments in a timely fashion showed he was not a good candidate for a permanent loan modification.

For these reasons, the District Court properly dismissed Nguyen's claim with prejudice.

## IV. THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER 15 U.S.C. § 1639F BECAUSE THE STATUTE WAS NOT EFFECTIVE AND BECAUSE AURORA PROPERLY CREDITED NGUYEN'S PAYMENTS.

Nguyen appeals the District Court's entry of summary judgment on his claim under 15 U.S.C. § 1639f. He alleges Aurora violated § 1639f when it did not

25

credit his March, April, May, June, July, and August/September payments on the date they were received, or within five days thereafter . (Aplt. E.R. at 360-62.) Nguyen's claim cannot withstand summary judgment because not only is his claim premised on a law not effective until January 2014, but because he has failed to provide any evidence showing Aurora did not properly credit his payments or that he suffered any actionable damages. Summary judgment was properly granted in favor of Aurora.

### A. Aurora Cannot Be Liable for Violations of § 1639f During 2010, Because The Law Had Not Yet Been Enacted.

Plaintiff's claim for relief under § 1639f is based on a series of loan payments allegedly misapplied by Aurora between March and September 2010. (*Id.* at 360-62.) However, 15 U.S.C. § 1639f was not signed into law until July 21, 2010, and was not effective until January 10, 2014. As a result, summary judgment in favor of Aurora was proper as a matter of law.

Section 1639f was enacted under Title XIV of the Dodd-Frank Act (the **Act**). Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, § 1464(a), 124 Stat 1376, 2184 (2010). Section 1400 of the Act clarifies when § 1639f and other provisions are to be effective. *See* 15 U.S.C. § 1400. Section 1400(c)(2) provides that a section created under the Act "shall take effect on the date on which the final regulations implementing such section, or provision, take effect."

26

It was not until 2013 that the Consumer Finance Protection Bureau (**CPFB**) developed final rules to implement the newly-enacted § 1639f. *See* Mortgage Servicing Rules Under the Truth in Lending Act**,** 78 FR 10901 (Feb. 14, 2013). This final rule unambiguously identifies the effective date of §1639f as January 10, 2014, *id.* at 10902, long after the alleged wrongdoing.

Recognizing this fact, Nguyen argues § 1639f was not "positive law," meaning it was merely a reorganization of existing law. (Opening Brief at 15.) Not only did Nguyen not advance this argument below, but he has not identified any case law or statutory provisions previously imposing identical or similar requirements. (*See id.* at 14-16.) More importantly, Nguyen has provided no explanation as to why he did not sue Aurora under already existing law, instead of a statute not in effect at the time he brought this suit.

Further, Nguyen made four of the six payments at issue prior to the Act's passage, and therefore he cannot succeed as it relates to the March, April, May, or June payments as a matter of law.

## B.    Nguyen Did Not Provide Sufficient Evidence to Show He is Entitled to Relief Under § 1639f.

Even assuming § 1639f was effective between March and September 2010, Aurora is entitled to summary judgment because there is no evidence in the record to support a finding that Aurora misapplied his payments.

Section 1639f states "no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency...." 15 U.S.C. § 1639f(a). On appeal, Nguyen does not point to any evidence in the record showing Aurora failed to credit his payments to his account the same day on which they were received, nor does he even appear to address this argument. (Opening Brief at 13-16.) In the SAC, Nguyen alleges Aurora did not credit the March payment to "anything at all that was due and owning" on his account. (Aplt. E.R. at 360, 362.) However, Aurora's records show Nguyen's March payment was credited toward his account on March 26, 2010, the same day he alleges Aurora received the payment. (*Id.*. at 255, 304, 360.) Because this payment did not constitute a full payment under the Modification Aurora placed the money into a "suspense account" until Nguyen made payments totaling $1,613.64, as permitted by the Workout Agreement. (*Id.* at 255, 304, 386 ¶ 10.) Aurora clearly credited the payment toward Nguyen's account, because it drew from the suspense account to make complete payments under the Modification following his April, May, June, July, and August/September payments. (*Id.*. at 215-18, 255-56, 298-304.)

This procedure is expressly provided for in the deed of trust and the Workout Agreement. (*Id.* at 278, 309, 386 ¶ 10.) Aurora complied with the statute

with respect to the March payment, although it was four months before the statute was even enacted.

Nguyen also alleges Aurora did not properly credit his April payment. (*Id.* at 360-62.) The uncontroverted facts show Nguyen's April payment was credited toward his account on April 19, 2010. (*Id.* at 255, 304.) Of the April payment, $998.63 was credited toward interest and $615.01[3] was credited toward Nguyen's escrow deficiency, . (at 255 & 304.) Nguyen provides no evidence to controvert these facts.. Nguyen's failure to rebut Aurora's evidence in the District Court properly resulted in judgment for Aurora.

Nguyen makes similar allegations concerning his May, June, July, and August/September payments. (Aplt. E.R. at 361-62.) The uncontroverted evidence makes clear that for each payment made, $998.63 was credited toward interest under the Modification and $615.01 was credited toward Nguyen's escrow account after money was taken from suspense. (Aplt. E.R. at 255-56, 298-304.) Nguyen has provided no evidence to show Aurora did not credit his account in this manner, and as a result, the District Court properly found Aurora was entitled to summary judgment on this claim .

---

[3] Of the money credited, $55.91 came from plaintiff's suspense account to total full payments under the Loan Modification. (Aplt. E.R. at 255 & 304.)

**C.     Nguyen Did Not Suffer Actionable Damages.**

Even assuming § 1639f was in effect and Nguyen had shown the March payment was put into the suspense account but later taken out, summary judgment was still proper because Nguyen failed to establish he suffered any damages. Pursuant to 15 U.S.C. § 1640 (a), the measure of damages for an individual claiming violation of § 1639f is (1) actual damages sustained as a result of the failure to properly credit the payments, as well as (2) all finance charges and fees paid by the customer due to the servicer's failure to properly apply the payments. Nguyen fails to provide any evidence of either. At the onset, Nguyen can only sustain the claim based on his March payment, as that was the <u>only payment</u> actually applied to the suspense account, instead of interest and escrow. (*See* Aplt. E.R. at 255-56 & 298-304.)

<u>First</u>, Nguyen's only allegations of "actual damages" come in the form of alleged damage to his credit. (*See Id.* at 362.)  Nguyen claims he suffered damage to his credit because Aurora improperly reported the "incorrect outstanding balances as debt to the credit reporting agencies.". (*Id.*)  Nguyen not identified any evidence in the record showing Aurora improperly reported any payment as late. (*See Id.* at 159-64.)  Nguyen did not provide a single credit report, nor did he make any showing any loss of credit worthiness was related to Aurora's failure to credit his payment toward interest and escrow or that he suffered a tangible loss of credit as a

30

result of his March payment being improperly reported as late. (*Id.*) He provided no evidence to show he failed to receive credit or that he received credit on materially worse terms because of payment inaccuracies. (*Id.*).

Second, Nguyen fails to provide evidence to show he was charged and paid any late fees associated with the any payment. It is undisputed Nguyen was not only charged late fees for his June or July payments, and that Nguyen failed to provide any evidence he paid those late fees. (Aplt. E.R. at 255-56, 303, & 361.) Nguyen cannot recover damages for late fees he was *charged*, but rather only those he actually *paid.* 15 U.S.C. § 1640 (a)(4).

Last, Nguyen implies he is entitled to statutory damages. (Aplt. E.R. at 363.) Nguyen provides no basis for this assertion, as statutory damages are only permitted for violations of specifically enumerated provisions. 15 U.S.C. § 1640(a); *See Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 990-92 (7th Cir. 2000). Because § 1639f is not included in § 1640(a), Nguyen is not entitled to statutory damages a matter of law. *Cf. Brown*, 2020 F.3d at 992.

Nguyen cannot demonstrate he suffered any damages. There is no genuine issue of material fact remaining for trial, and summary judgment for Aurora was proper as a matter of law.

## V. THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER THE UCL BECAUSE IT IS PREEMPTED BY HOLA.

Nguyen's appeal challenges the sufficiency of Aurora's motion for summary judgment for violations of the UCL in his opposition to Aurora's motion, as well as in supplemental briefing. (*See* Aplee. E.R. at 10-40.) Nguyen argues the District Court improperly found his claims were preempted because (1) the Act does not apply to contracts that preceded it; (2) the Act was not retroactive; and (3) HOLA preempted the UCL as it applies to Nguyen's allegations. (Opening Brief at 13-34.) However, controlling Supreme Court case law as well as Ninth Circuit precedent supports the District Court's findings on preemption.

Nguyen also argues Aurora should be barred from arguing preemption because it failed to raise it as an affirmative defense. (Opening Brief at 18-19.) The Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citations omitted). In a situation where an affirmative defense was not explicitly raised, a defendant only waives its right to assert the defense where raising it would prejudice the other party, especially when the defense is dispositive if raised earlier. *Id.*

Aurora stated it had additional, unstated affirmative defenses. (*See* Aplt. E.R. at 347.) Aurora raised the issue of HOLA preemption on summary judgment,

32

and Nguyen was given two opportunities to brief preemption issues. (*See Id.* at 390-405.) He has failed to show Aurora's failure to specifically raise this defense earlier prejudiced him in any way, especially when he was given two opportunities to fully brief the issue. Aurora should be permitted to argue Nguyen's claims are preempted by HOLA.

### A.     Nguyen's UCL Claims Are Preempted by HOLA.

Nguyen's UCL claims are preempted by HOLA. At all times material to this lawsuit, Aurora Bank FSB was a federally chartered bank, and its subsidiary Aurora enjoyed equivalent federal preemption rights. *See Watters v. Wachovia Bank, NA.*, 550 U.S. 1 (2007); 12 C.F.R. §§ 559.2, 559.3(n)(1). Therefore, the servicing operations of Aurora are subject to a comprehensive scheme of federal regulation under HOLA and its accompanying Office of Thrift Supervision (**OTS**) regulations. *See* 12 C.F.R. § 560.2(b)(1)-(13).

During the lifetime of Nguyen's loan, HOLA specifically preempted the entire field of lending regulation. 12 C.F.R. § 560.2(a); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1008 (9th Cir. 2008). Federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002); *see also Rice v. Santa*

33

*Fe Elevator*, 331 U.S. 218, 230 (1947) ("[T]he historic police powers of the States are not to be superseded by [a federal law] unless that was the clear and manifest purpose of Congress.").

Within the Ninth Circuit, HOLA will preempt a state law of general applicability, such as the UCL, if it falls under § 560.2(b) as applied. *Murillo v. Aurora Loan Servs., LLC*, No. C 09–00503 JW, 2009 WL 2160579, at *2 (N.D. Cal. July 17, 2009) (citing *Silvas*, 514 F.3d at 1006; *but see Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002). However, when a law of general applicability only incidentally affects federal savings associations, it is not preempted. *Silvas*, 514 F.3d at 1006.

The Ninth Circuit adopted the OTS's general framework for analyzing whether HOLA preempts a state law. *Id.* at 1005. The first step is to determine whether the state law at issue is among the types of laws identified in § 560.2(b) as expressly preempted. If so, the analysis will end there; the law is preempted. *Id.* at 1005. Section 560.2 lists thirteen categories of laws preempted by OTS regulations, including state laws purporting to impose requirements regarding: "(5) Loan-related fees, including without limitation, initial charges, **late charges**, prepayment penalties, **servicing fees**, and overlimit fees; (6) Escrow accounts, impound accounts, and **similar accounts**; ... [and] (10) Processing, origination,

**servicing**, sale or purchase of, or investment or participation in, **mortgages**; . . ." *Id.* (emphasis added).

First, to the extent Nguyen's UCL claim rests on Aurora's business practice of placing a borrower's partial or incomplete payments into a suspense account instead of immediately applying each payment to interest or principal, such claim is explicitly preempted by §§ 560.2 (b)(5)-(6) and (10), as it relates directly to late charges, servicing fees, accounts set up for a loan, and Aurora's servicing activities. Nguyen also takes issue with how interest was calculated on his loan, but such claims are explicitly preempted by § 560.2(b)(4), which deals with the terms of credit on loans, including deferring the capitalization of interest, adjustments to interest rates, the maturity dates of loans, and any circumstances under which a loan may be called due.

Second, Nguyen's unsupported allegations concerning Aurora's use of the MERS system and alleged business practices of utilizing "robo-signers" and "surrogate signers," directly attack Aurora's servicing operations and are preempted by § 560.2(b)(10) of HOLA.

Last, plaintiff's allegations related to the types of loss mitigation programs offered are explicitly preempted by § 560.2 (b)(10), which preempts all state law causes of action against servicers related to the "servicing ... of ... mortgages." *See Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D. Cal. 2009) (finding

35

borrower's UCL claim was preempted under HOLA to the extent it contained allegations related to a servicer's loan modification efforts).

Nguyen's attempt to improperly impose such requirements on Aurora through his UCL claim is explicitly preempted by HOLA and thus, summary judgment was proper.

### B.    The Act Does Not Apply to Contracts That Preceded the Act.

The Act was passed on July 21, 2010 to eliminate field preemption for federal savings banks and to replace it with the conflict preemption analysis employed by the Supreme Court in *Barnett v. Bank of Marion Cnty., N.A.*, 517 U.S. 25 (1996).  The Act also transferred oversight for federal savings banks from the OTS to the Office of the Comptroller of the Currency (**OCC**).

The Act "expressly provides that OTS regulations still apply to any contract predating" its enactment.  *See In re Checking Account Overdraft Lit.*, 880 F. Supp. 2d 1290, 1295 (S.D. Fla. 2012).  Under 12 U.S.C. § 5553, the Act "shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of [OTS] regarding the applicability of State law under Federal banking law to any contract entered into on or before July 21, 2010, by national banks, Federal savings associations, or subsidiaries thereof."  Any contracts entered into on or before July 21, 2010 are not subject to the Act.

36

Courts considering this issue have found loan agreements *drafted* prior to the Act's effective date are governed by the laws in place prior to its enactment. *See Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2012 WL 4742815, at *3 n.2 (N.D. Cal. Oct. 3, 2012) (finding the Act was not retroactive and using *Silvas'* field preemption analysis to grant bank's summary judgment motion as to plaintiff's UCL claims); *Copeland-Turner v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1132, 1137-38 (D. Or. 2011); *see also Molosky v. Washington Mut. Inc.*, 664 F.3d 109, 113 n.1 (6th Cir. 2011) ( ... finding the Act should not be applied retroactively); *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, C 10-3883 SBA, 2012 WL 6652442, at *3 n.3 (N.D. Cal. Dec. 20. 2012) (finding the Act not retroactive, applying *Silvas* analysis); *Poindexter v. Wachovia Mortg. Corp.*, 851 F. Supp. 2d 121, 128 n.11 (D.D.C. 2012) (noting preemption changes to HOLA, but declining to apply the new standards because the dispute arose prior to the Act's enactment); *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 91 n.9 (D. Mass. 2012) (noting Act "significantly diminished the extent to which HOLA and its implementing regulations may preempt state law" but finding new preemption standard inapplicable as plaintiffs' loans were consummated before Act was enacted).

In *Settle v. World Savings Bank, F.S.B.*, No. ED CV 11–00800 MMM (DTBx), 2012 WL 6176905 (C.D. Cal. Jan. 11, 2012), the Central District of

California found plaintiffs' UCL claims preempted under the *Silvas* standard because the claims involved mortgage loans originated before July 21, 2010, thus making the Act inapplicable. The Court reached this finding by analyzing 12 U.S.C. § 5551 in conjunction with § 5553. The Court noted 12 U.S.C. § 5553 was "intended to 'provide stability to existing contracts' by preserving the applicability of OCC and OTS preemptive rulings to contracts that were made before the enactment [of the Act]." *Id.* at \*14 (quotations omitted). Otherwise, "[t]here would have been no reason for Congress to enact Section 1043 if Congress had intended to allow existing OCC and OTS preemption rules to apply to new consumer financial agreements that are made after July 21, 2010." *Id.*

The Court then looked at 12 U.S.C. § 5551 to determine the date on which the new preemption provisions of the Act become "effective." Section 4 of the Act provides that, "[e]xcept as otherwise specifically provided in this Act .., this Act and such amendments shall take effect 1 day after the date of enactment of this Act." *Id.* (citing PL 111–203, 2010 HR 4173 § 4.) "One day after enactment" was July 21, 2010. *Id.*

The Court reasoned since this section only states the date any new laws and regulations will become effective and does not address whether the amendment applies to preexisting contracts, this section and § 5553 must be read together to give effect to both provisions, resulting in a finding of non-retroactivity. *See id.* at

38

\*15 (cited authorities omitted). Considering both provisions, the Court found since "[p]laintiffs entered into loan agreements with defendants long before the [Act] was enacted," their UCL claims were preempted by HOLA. *Id.* at \*14.

This result is supported by the OCC's Final Rule on OTS Integration and Dodd-Frank Act Implementation. Dodd-Frank Act Implementation, 76 Fed. Reg. 43,549 (July 21, 2011) (hereinafter, the **Final Rule**). In the Final Rule, the OCC instructed that "[a]ctions and regulations in effect prior to the effective date are not subject to" the new preemption standards, but rather only "[*f*]*uture* preemption determinations would be subject to the new Dodd-Frank Act procedural provisions." *Id.* at 43,557 (emphasis in original). Notably, the OCC stated that "[w]here Congress wanted to make wholesale changes to existing preemption standards, it clearly did so, as it did by eliminating field preemption for Federal thrifts and preemption for operating subsidiaries, and those standards operate prospectively." *Id.*

There is no doubt the Act expressly states it is not to be given retroactive effect as to any contracts existing prior to its enactment. Nguyen's loan was originated on December 6, 2005. (Aplt. E.R. at 352.) Any issues he takes with the terms of that loan (i.e., the charging of interest or fees or the manner in which payments are applied to his account), the notarization of documents or the use of

MERS in the origination or servicing of that loan are all governed by the law in place when the loan was originated. The Act cannot be applied to that contract.

As to Nguyen's complaints about the Workout Agreement, that contract was also drafted prior to the enactment of the Act. Plaintiff does not dispute certain provisions of the Act were enforceable on the day it took effect, but the Workout Agreement was executed prior to this date. Thus, the pre-Act laws must also be applied to this alleged wrongdoing when determining whether preemption applies.

Nguyen cites to an implementing rule of the Act ("43557") for the proposition that the Act must apply to preemption "*determinations*" made after July 21, 2011, and because this lawsuit was initiated after this date, the Court should apply the Act to this case. (Opening Brief at 32-33.) Nguyen completely misreads the language of the Act, singling out a few words from § 5553 to support his reading of the statute. Nguyen narrowly reads § 5553 to apply to any prior "regulation, order, guidance, or interpretation" established by the OTS as it relates *specifically* to Nguyen's loan agreement. (*Id.*) Nguyen's reading of the Act would render it completely meaningless, as almost no federal order, guidance, or interpretation is drafted specifically in response to a particular individual's contract.

Courts across the country have come to the exact conclusion that the District Court did here, and Nguyen cites to no case law supporting his reading of the Act.

The District Court correctly found the Act does not apply to plaintiff's claims because his loan was consummated prior to July 21, 2010.

### C. The Legislature's Exclusion of Retroactive Language Further Cautions Against Retroactive Application.

Even if § 5553 does not mandate prospective application, the Act's non-retroactivity can also be derived from the fact Congress did not explicitly state the Act should be retroactive. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The five prior versions of House Bill 4173 (**HR 4173**) included the same explicit language about the *non*-retroactivity of the Act as to contracts existing pre-enactment. *Compare* H.R. 4173, 111th Cong. (2010) (enacted) *with* H.R. 4173, 111th Cong. (2009) *and* S.B. 3127, 111th Cong. (2009).

Prior versions of the Act "would have had a retroactive impact by creating various new standards for preemption under the National Banking Act, invalidating an extensive body of national bank judicial, interpretive and regulatory preemption precedent." *See* Final Rule at 43557 n.52. The Legislature's decision not to adopt this approach in the Act is clear evidence of its intent to apply the Act prospectively only. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").

Moreover, there is a presumption against applying a law retroactivity. *Landgraf v. USI Film Products*, 511 U.S. 244, 265-67 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265. The largest category of cases applying this presumption against retroactivity involves "new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271. The presumption against retroactivity is supported by several Constitutional provisions, including the due process clause, the *ex post facto* clause, and "Article I, § 10, cl. 1, which prohibits States from passing laws … impairing the Obligation of Contracts." *Id.* at 265.

To ensure retroactive statutes are not used to "sweep away settled expectations suddenly and without individualized consideration," a court must "ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269-70. This test requires a two-part analysis. The first step is to determine whether Congress has expressly set forth the statute's proper reach. If so, the law is not retroactive. *Id.* at 280. If the statute does not contain "such express command" the Court must then "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose

42

new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

Requiring Congress manifest clear assures it retains responsibility for the policy considerations of retroactivity and has affirmatively considered the potential unfairness of retroactive application, determining it is an acceptable price to pay for the countervailing benefits." *Id.* at 272-73.

Here, the presumption against retroactivity must apply. Applying the Act retroactively would impair the rights possessed by Homecomings when it originated the loan, as well as the rights of those entities working on its behalf, like Aurora, and would increase their liability for past conduct. Nguyen alleges Aurora acted in an unfair and deceptive manner by placing his insufficient and partial payments into a suspense account, and improperly calculating interest on his loan when he made the partial or incomplete payments. (Aplt. E.R. at 373-74.) Nguyen expressly gave his lender and its assigns this right if he made a payment totaling less than the contractual amount. (*Id.* at 278.)

Similarly, Nguyen asks this Court to impose requirements related to how it charged fees when he made only partial or incomplete payments toward the balance of his loan. These fees were permitted by Nguyen's deed of trust, and finding these acts improper now would significantly impair both the lender's and

Aurora's rights. Moreover, applying the Act now and the rule of conflict preemption rather than field preemption stands to unfairly impose new duties on Aurora with respect to transactions already completed. Further, applying the Act in this way would not promote the predictability and reliability of real estate contracts, such as deeds of trust.

Nguyen also complains Aurora used MERS to "avoid accurately recording property interests" and employed a practice of utilizing "robo-signers" and "surrogate signers" to execute recorded documents. (Aplt. E.R. at 375.) However, Nguyen expressly agreed to the use of MERS in the deed of trust. (*Id.* at 277.) As to the allegations of "robo-signing," the evidence establishes Aurora did not robo-sign any documents here, and in fact employed proper business practices to avoid such problems. (*See* Aplee. E.R. at 70:12-73:2.) To the extent the Act might require more scrutinizing business practices, imposing such requirements now would increase Aurora's liability for past conduct and impose new duties for transactions long completed, favoring the presumption against retroactive application.

### D. Aurora Was Not Required to Have the OCC Make A Preemption Analysis.

Nguyen also contends that, Aurora was required to provide this Court with substantial evidence the OCC reviewed the law as applied to this case and found it was not preempted. (Opening Brief at 18.) This is also incorrect. "Preemption

rulings based on 'factual evidence' for a particular defendant bank" would be unworkable and would "have little value—even for a single bank—much less for many or all national banks." *Parks v. MBNA Am. Bank, N.A.*, 54 Cal. 4th 376, 393 (2012). "Additionally, the new evidentiary requirement [would] make it very difficult for national banks to predict, in advance, with which state laws they must comply."

## VI. THE COURT PROPERLY GRANTED SUMMARY JUDGMENT ON NGUYEN'S CLAIM UNDER THE UCL BECAUSE NO TRIABLE ISSUE OF DISPUTED MATERIAL FACT EXISTS TO SUPPORT IT.

Assuming Nguyen's UCL claims are not preempted, he has failed to provide any evidence showing a genuine issue of disputed material fact for trial.

The UCL operates to prohibit three varieties of unfair competition, namely acts which are unlawful, unfair, or deceptive. Cal. *Bus. & Prof. Code* § 17200; *Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Nguyen only challenges the District Court's decision to the extent it granted summary judgment in favor of Aurora as to whether its alleged business practices in the SAC were "unfair" or "deceptive," and therefore Nguyen has waived any argument that the practices are "unlawful." (Opening Brief at 35-57.)

Courts have struggled with how to identify when a business practice is "unfair.". *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010). Courts have developed two separate definitions for the term "unfair." First is the

balancing test set forth in *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980). Under this balancing test, the Court must examine whether the "harm to the consumer" outweighs the activity's "utility." *Id.* In so doing, the Court examines the activity's impact on the victim and balances that impact against the reasons, justifications, and motivations of the alleged wrongdoer. *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (1996). The issue of utility is determined as a matter of law. *Motors, Inc.*, 102 Cal. App. 3d at 740.

Other courts have found a business practice is unfair if it "offends an established public policy or is ... immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (citations omitted). The Ninth Circuit favors the approach espoused in *Gregory*.

Courts are more clear on when a business practice is "deceptive" or "fraudulent." To show a business practice is deceptive, a plaintiff need not show he or the public were actually deceived, only "that members of the public are likely to be deceived." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170 (2002) (citations omitted). A plaintiff must set forth not only the "who, what, when, where, and how" of the allegedly deceptive conduct, but they must also

explain why the acts are false and misleading. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

To have standing under the UCL, a plaintiff must " demonstrate injury in fact **and** a loss of money or property caused by unfair competition." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008) (emphasis added); *see Bus. & Prof. Code* § 17204. The second part of the phrase, "as a result of," imposes a causation requirement. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (2008). Injury-in-fact is present in the following circumstances: (a) when the plaintiff expended money due to defendant's unfair competition, (b) when plaintiff lost money or property, or (c) when plaintiff was denied money to which she was entitled. *Id*. at 854-55 (collecting cases).

## A. Aurora's Use of A Suspense Account Does Not Violate the UCL

Nguyen appears to abandon the argument proffered in the operative complaint—related to the payments made in March to September 2010—and instead focuses on the allegations brought in his supplemental opposition brief, alleging Aurora should be liable under the UCL for payments he made prior to when Aurora began servicing the loan. (*Compare* Aplt. E.R. at 373-74 *with* Opening Brief at 35-39.) As a result, Nguyen has abandoned his claims as they related to the payments placed into suspense in 2010 in favor of those payments made prior to September 1, 2008. *See Navajo Nation*, 535 F.3d at 1056, 1063 n. 3.

47

### 1. Aurora is not liable for Payments Made to Homecomings.

Even assuming Nguyen can pursue his UCL claim for payments made prior to September 1, 2008, he fails to identify a single legal basis to hold Aurora liable for payments made before it serviced the loan. (*See* Opening Brief at 38.) Contrary to Nguyen's assertions, Nguyen is clear he made each payment prior to April 2008 directly to Homecomings, an entity not named in this lawsuit. (Aplee. E.R. at 79-109.)

Nguyen does not dispute Aurora began servicing the loan in April 2008. (Aplt. E.R. at 251.) At best, Nguyen has alleged—but not established by evidence—Aurora should be liable for any misapplication as Homecoming's successor. However, when a corporation purchases or acquires by transfer the assets of another corporation, California has a general rule of "successor *nonliability*" for the liabilities of its predecessor. *See Fisher v. Allis-Chalmers Corp. Prod. Liab. Trust*, 95 Cal. App. 4th 1182, 1188 (2002) (emphasis added). Specifically, when one corporation sells or transfers assets to another corporation, the transferee is not liable for the debts and liabilities of the transferor unless (1) the purchaser agreed to such assumption; (2) the transaction amounts to a merger of the two corporations, (3) the transferee is merely a continuation of the transferor; or (4) the transaction is entered into fraudulently to escape liability for debts. *Ray v. Alad Corp.,* 19 Cal. 3d 22, 28 (1977).

Nguyen does not provide any evidence to show Aurora should or could be held liable for servicing misconduct as successor servicer. (*See* Opening Brief at 32-40.) Nguyen has not established Aurora agreed to be liable for any misconduct by Homecomings; that the two corporations merged; that Aurora was in any way a continuation of Homecomings; or that Homecomings fraudulently sold Nguyen's loan . (*See id.*) Summary judgment was proper as it relates to any claims that pre-date Aurora's time as servicer of the loan.

### 2. Aurora's Use of A Suspense Account is Not Unfair or Deceptive.

Nguyen has provided no evidence showing a genuine issue of material fact as to whether Aurora's use of the suspense account is unfair under either the *Motors* or the *Gregory* test, or that this conduct was "deceptive." Nguyen first argues "a line of cases ... hold it is ... unfair and/or deceptive ... to fail to properly and accurately credit a borrower's payments to his loan." (Opening Brief at 35.) Not only do these cases not interpret California law, but Nguyen grossly misstates their findings. Not one of these cases find it is unfair or deceptive to accurately credit a borrower's payments toward his loan, nor do they analyze California law or find a lender violated an unfair competition law.

Nguyen first cites to *Workman v. GMAC Mortg. LLC* (*In re Workman*), 392 B.R. 189 (Bankr. D.S.C. 2007) and *Ronemus v. FTB Mortg. Servs.* (*In re Ronemus*), 201 B.R. 458 (Bankr. N.D. Tex. 1996). In *Workman*, the court found a

lender in civil contempt for violating a discharge injunction by improperly crediting payments made during the pendency of a bankruptcy case, and for charging the borrower unauthorized fees. *Id.* at 192-94. In *Ronemus*, the borrowers made every payment in their Chapter 13 plan, but their lender violated the automatic stay by adding unauthorized fees to the borrowers' account, placing complete payments into suspense, and violating the discharge injunction. *Id.* at 458-60. These cases are inapplicable here, because Nguyen's allegations do not involve his bankruptcy or a violation of the discharge injunction.

Next, Nguyen directs the court to *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181 (D. Mass. 2006). In *Islam*, the Court found a borrower had stated properly alleged the servicer violated Massachusetts' unfair competition law by failing to cash his final payment for over two weeks, improperly adding substantial fees to the account, and incorrectly reporting his payment history to credit reporting agencies. *Id.* at 199. Nguyen does not dispute Aurora cashed his payment immediately upon receipt, his only allegations relate to Aurora's placement of that money in a suspense account. (*See* Aplt. E.R. at 373-374.) More importantly, Nguyen could not identified a single fee or cent of additional interest he was charged due to the suspense account. (*See* Aplee. E.R. at 87:12-13).

Nguyen also cites to *In re Gorshtein*, 285 B.R. 118 (Bankr. S.D.N.Y. 2002). In *Gorshtein*, the court imposed sanctions on a lender for repeatedly seeking relief

from the automatic bankruptcy stay by certifying the borrowers were in default, although each were current on their loans. *Id.* at 124-27. *Gorshtein* is inapplicable here, as Nguyen does not contend Aurora improperly sought relief from the automatic stay during his bankruptcy, or that Aurora reported he was in default on his loan, when he was not.

Nguyen's reliance on *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999) is similarly unavailing, as *Rawlings* dealt with an alleged violation of the Real Estate Settlement Procedures Act (**RESPA**), where defendants failed to correct payment errors in response to a qualified written request. *Id.* Nguyen was in a very different position from these borrowers. Nguyen has had a full and fair opportunity to request and review all documents from Aurora related to his account. Yet, Nguyen has failed to identify any evidence showing Aurora has failed to account for a single payment he made while servicing the loan, and especially between February 2010 and October 2011. (*See* Opening Brief.) Further, Nguyen fails to show he was charged additional interest or fees as a result of Aurora's use of the suspense account. (*Id.*)

Nguyen abandons the allegations in his SAC and now alleges Aurora "suddenly" took out "almost $2,000" in 2011 from the suspense account. (*Id.* at 37.) However, Nguyen does not identify a single shred of evidence showing this

51

occurred. (*See id.*) To defeat summary judgment, Nguyen must provide more than mere argument or conjecture. *See* FED. R. CIV. P. 56(c).

To the contrary, Aurora's records show it has accounted for the money put into and taken out of the suspense account at all times between February 2010 and October 2011. Aurora admits Nguyen's March payment was placed into suspense because it was not a full payment. (Aplt. E.R. at 255.) Aurora's records show of the money in suspense, $280.28 was removed to supplement the April through August/September payments. (*Id.* at 303-04.) Nguyen made an additional payment for $867.00 on October 2010, which was placed in suspense. (*Id.* at 303.) One day later, Aurora applied this money together with that in suspense toward his loan as a full payment. (*Id.*) This left $530.81 in his suspense account. When Nguyen made an additional $500 payment on October 21, 2010, it went into suspense because $1,030.81 was not a full contractual payment. Nguyen has not provided identified any additional payments made during this time frame that were not fully accounted for. (*See* Opening Brief.)

Nguyen also has not provided any explanation of how Aurora's use of a suspense account was "unfair" or "deceptive." (*See id.*) Instead, Nguyen argues— without a single citation to case law or the record—if Aurora had not used the suspense account, he would not have lost his home and that Aurora, by holding his funds in suspense, hurt his ability to cure his default. (*Id.* at 39 & 56.) There is

simply no evidence to support these allegations. Nguyen alleges over the course of his loan, he paid approximately $81,456.03 toward the loan.[4] Even under the most conservative estimate, he would have owed $112,653.90 over the same time period, had he made the regular monthly payments under the note and Modification.[5] The property was sold because Nguyen failed to make his payments, not because any of his payments were unfairly or deceptively held in suspense.

To the extent Nguyen argues the suspense account in general was "unfair" because he was charged extra fees or interest, evidence establishes Nguyen was not charged a single fee or cent of interest he would not have otherwise been charged. Not only did Aurora not charge interest on monies put into a suspense account, but Aurora did not charge interest on the unpaid principal balance of a modified loan like Nguyen's. (Aplee. E.R. at 57:1-2; 60:10-22.) The Modification did not permit Aurora to add unpaid interest to the unpaid principal balance of the loan. (Aplt. E.R. at 307-15.) Nguyen was never charged any additional interest in connection with monies in suspense, unless such payments would've included additional

---

[4] $66,381.28 (Aplee. E.R. at 20:1) + $4,362.10 (*id.* at 169) + $10,712.65 (Aplt. E.R. at 298-305.)

[5] Nguyen's initial payments under the original terms of the loan were $1,794.63. (Aplt. E.R. at 265.) Not accounting for escrow payments or interest adjustments, Nguyen owed a minimum of $61,017.42 for the time period between May 2006 and February 2009. Plaintiff's payments under the Modification were $1,613.64. (*Id.* at 254.) Therefore, Nguyen owed a total of $51,636.48 between March 2009 and October 2011. $61,017.42 + $51,636.48 = $112,635.90.

interest payments, which did not happen here.  This is by all definitions a "fair" practice.

Nguyen also fails to identify any "fees" or "charges" he incurred.  (*See* Opening Brief.)  The suspense account has utility to ensure a borrower's money is allocated as she wishes.  Further, Aurora's use of a suspense account does not violate any identified or unidentified public policy and therefore is "fair" under the *Gregory* test.  Almost every bank utilizes this "feature," and it does not violated public policy.  Moreover, the use of a suspense account can hardly be described as "immoral, unethical, oppressive, unscrupulous, or substantially injurious" when a borrower does not suffer any actual injury through its use.

Similarly, Aurora's use of a suspense account was not "deceptive."  A business practice is deceptive when members of the public are likely to be deceived."  *Morgan*, 177 Cal. App. 4th at 1254.   However, a practice cannot be deceptive when a party is on notice of the practice but agrees to it.  *Walker*, 98 Cal. App. 4th at 1178.  Here, the deed of trust and the Workout Agreement made clear the lender, MERS, or any successor would be permitted to hold a borrower's partial payments until they totaled a full payment.   (Aplt. E.R. at 278, 386.) Nguyen was on notice that Aurora had the right to place his payments into suspense.

### B.     Aurora's Use of the MERS System is Not Unfair or Deceptive.

Nguyen argues Aurora's use of MERS is "unfair" or "deceptive" under the UCL because it was not licensed to do business in California as of October 16, 2008.  (Opening Brief at 43-46.)  Although California courts are split on whether MERS was required to register as a foreign corporation, all addressing the issue are clear MERS's failure to register does not void its actions and that it cured its previous failure to register following its registration.  *See, e.g.*, *Perlas v. Mortg. Elec. Registration Sys.*, No. C 09-4500 CRB, 2010 WL 3079262, at *6-7 (N.D. Cal. Aug. 6, 2010) (decision rendered after MERS's registration); *but see, e.g.*, *Carter v. Deutsche Bank Nat'l Trust Co.*, No. C09-3033, 2010 WL 424477 (N.D. Cal. Jan. 27, 2010) (decision rendered prior to MERS's registration).

Cal. *Corp. Code* § 2105(a) obligates all foreign corporations to register with the California Secretary of State if they "transact intrastate business."  Section 191 defines "transact intrastate business" as "entering into repeated and successive transactions of business in [California], other than interstate or foreign commerce." Cal. *Corp. Code* § 191(a).   Penalties for failure to register are restricted to monetary fines and an inability to initiate a lawsuit in California Courts.  Cal. *Corp. Code* § 2203(a)-(c).   A foreign corporation may retroactively cure any wrongdoing by registering and paying all civil fines and taxes.  § 2203(c); *United Md. Mgmt. v. Gatto*, 49 Cal. App. 4th 1732, 1741 (1996).  Once a foreign company

55

cures its error, it is "restored to full legal competency and its prior transactions [are] given full effect." *Id.*

Nguyen agrees MERS properly registered with the California Secretary of State in 2010. (Opening Brief at 44.) Thus, any issue existing in 2008 is no longer relevant, because all actions taken by MERS were given retroactive effect. *Id.*

Moreover, to the extent Nguyen alleges MERS was not permitted to assign its beneficial interest in the Deed of Trust (Opening Brief at 44-45) or that LSI was not authorized to sign the Notice of Default (*Id.* at 45-46), Nguyen does not challenge the District Court's dismissal of his wrongful foreclosure claim, and thus he has waived his ability to challenge it now here. (*See id.*)

Even if the Court addresses these issues, MERS did not assign any interest on behalf of Homecomings, but instead assigned its own interest as beneficiary in the deed of trust to Aurora. (Aplee. E.R. at 178.) To the extent Nguyen argues LSI was conducting business in California in violation of § 2105, such unfounded and speculative allegations are directly contracted by Nguyen's own allegations that the Notices of Default were signed in Illinois. (Aplee. E.R. at 26:21-22.) LSI was not doing business in California. Even if it was, LSI's failure to register would *not* render the documents void, but would rather subject LSI to civil penalties and would result in LSI not being able to affirmatively avail itself of the California Courts. *See* § 2203 (c).

56

Nguyen has also failed to show Aurora's use of the MERS system is "deceptive." Nguyen argues the MERS system is "deceptive" because it prevented him from accessing his property records. (Aplt. E.R. at 374-75.) However, Nguyen provided no evidence to show he was ever precluded from accessing his property records or that *any* borrower could be prevented from accessing publicly available property records simply because their servicer is a member of the MERS system. (Aplee. E.R. at 89:21-91:4.)

The District Court properly granted summary judgment related to Nguyen's claims regarding Aurora's use of the MERS system.

### C. Aurora Did Not Record False or Inaccurate Documents.

Nguyen fails to provide evidence showing it was Aurora's business practice to record false or inaccurate documents, or to have an agent do so. Nguyen alleges the Notices of Default, Corporate Assignment, and Substitution contain false information or a false acknowledgement of a notary public, but he does not identify any evidence to create a genuine issue of material fact. (Opening Brief at 50-52.)

First, Nguyen argues the Notices of Default were forged, and it was Aurora's business practice to solicit these forged documents from its agents Not only does Nguyen provide no evidence of forgery, but even if the Notices of Default were "robo-signed" by a persona at LSI masquerading as "S. Espinoza,"

57

Nguyen identifies no basis for finding Aurora liable. LSI <u>acted as an agent for Quality</u>, the trustee under the deed of trust, not Aurora. (Aplee. E.R. at 117.) Nguyen has provided no evidence to the contrary. Further, Aurora is aware of no case law holding a trustee under a deed of trust becomes an agent of the beneficiary simply by exercising the power of sale in accordance with California statutes. Moreover, Nguyen has not met his burden of establishing an agency relationship between Aurora and Quality. *Cal. Viking Sprinkler Co. v. Pac. Indemnity Co.*, 213 Cal. App. 2d 844, 850 (1963).

<u>Second</u>, to the extent Nguyen attempts to resurrect his wrongful foreclosure claim by alleging MERS was not entitled to execute the Assignment Homecomings had already surrendered its right to do business in California, it fails because not only has Nguyen not challenged the District Court's ruling that MERS properly assigned its interest to Aurora and Aurora was entitled to foreclose on the property, but MERS assigned <u>its</u> beneficial interest under the deed of trust, it did *not* assign Homecoming's interest. (Aplee. E.R. at 130.) It is irrelevant whether Homecomings was still licensed to do business in California.

<u>Third</u>, to the extent Nguyen alleges the Substitution was fraudulent, he has failed to provide any evidence showing Mia Morris or Bonnie Dawson worked for Aurora, or that Aurora was responsible for drafting the document. (*Id..* at 66:13-20; 68:10-15; 76:1-13.)

58

<u>Fourth</u>, Nguyen attempts to hold Aurora liable under a Consent Judgment entered into between the Department of Justice, the Attorney Generals of 49 states, Ally Financial, Inc., Residential Capital, LLC, and GMAC Mortgage, LLC. (*See* Opening Brief at 52) Aurora is not a party to the Consent Judgment and it was entered into after this action started. (Aplee. E.R. at 79.) Further, the Consent Judgment contains no findings related to Aurora or this loan, and therefore has no bearing on this action. (*See id.*)

Last, Nguyen questions whether Aurora is the holder of the note, thereby making foreclosure improper. (*See* Opening Brief at 53-56.) Aurora has never claimed to hold the note, but instead claimed beneficial interest in his deed of trust—an interest acquired from MERS. To the extent Nguyen compares this case to *Poseidon Dev. Inc. v. Woodland Lane Estates, LLC*, such a comparison is inappropriate because there is no dispute that Aurora was the beneficiary at the time of the sale.. (*See* Aplee. E.R. at 130-31.) In *Poseidon*, the foreclosing party had transferred all its interest in the deed of trust prior to the sale. 152 Cal. App. 4th 1106, 1118 (2007). Further, to the extent Nguyen argues Aurora has failed to establish that a third party, Homecomings, properly endorsed the note in blank, the burden is on *plaintiff*, not Aurora, to establish that the endorsement was improper. *See Celotex*, 477 U.S. at 322.

59

Nguyen has failed to identify any evidence establishing any information in the identified recorded documents was materially false. Therefore no genuine issue of material fact exists to find Aurora was engaged in the business practice of falsifying documents.

### D.  Nguyen Did Not Establish He Suffered An Injury in Fact.

Each and every basis for Nguyen's UCL claim fails for the independent reason that he has not established an injury in fact. Injury in fact is present when a borrower (a) loses money due to defendant's unfair competition; (b) loses money or property; or (c) is denied money to which he was otherwise entitled. *Hall,* 158 Cal. App. 4th at 854-55.

The only damages alleged are fees, charges, and interest payments. (Aplt. E.R. at 373-74.) The undisputed evidence shows Nguyen did not incur any late fees as a result of Aurora's placement of his funds into a suspense account. (*Id.* at 298-305.) Other than the late fees associated with his late June and July payments, Nguyen has not identified a single other fee or charge he sustained. (Aplee. E.R. at 87:9-13.) Nguyen did not identify any evidence of interest added to the principal of his loan, nor has he provided any evidence showing he paid additional interest. (*Id.*)

Similarly, Nguyen has not identified any evidence showing he lost the property due to the suspense account. Nguyen attempts to tie the inconsistent

Notices of Default to the suspense account without providing any no basis. (Opening Brief at 39.) Although there may remain a question as to the exact amount of Nguyen's default, such question is not material where he has failed to establish there was enough money remaining to cure the default.

Nguyen was indisputably in default on the loan and he lost the property due to this default, not because of "robo-signing" or Aurora's use of MERS. Nguyen has not shown that in absence of the "robo-signing" and other allegedly improper documents he would not have lost the property.

Further, to the extent Nguyen brings his UCL claim under the theory Aurora's business practices were "deceptive or fraudulent" he must provide evidence demonstrating he relied on these alleged business practices to his detriment. *See Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 253-54 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Nguyen identifies no evidence to tie the alleged deception to any reliance or resulting economic damages he may have suffered. As a result, he has failed to establish he suffered any injury in fact sufficient to create a triable issue, making summary judgment proper.

## **CONCLUSION**

For the reasons set forth above, Aurora respectfully requests the Court affirm the rulings of the District Court.

DATED this 13th day of February, 2014.

By:  */s/ Victoria E. Edwards*  _____

Victoria E. Edwards
Melissa L. Cizmorris
**AKERMAN LLP**
1400 Wewatta St.
Suite 500
Denver, Colorado 80202

Justin D. Balser
**AKERMAN LLP**
725 S. Figueroa Street, 38th Floor
Los Angeles, California 90017

Attorneys for Appellee
AURORA LOAN SERVICES LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

☒      this brief contains 13,981 words, excluding the parts of the brief exempted by FED R. APP. P. 32(a)(7)(B)(iii), *or*

☐      this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

☒      this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010, Times New Roman Font, and size 14-point font</u>, *or*

☐      this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)*_____ _____.

Signature:          <u>*s/ Victoria E. Edwards*          </u>
Attorney for:       <u>Appellee Aurora Loan Services LLC</u>

Date:               <u>February 13, 2014 </u>

Adopted from Form 6 of the Federal Rules of Appellate Procedure

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, counsel for Appellee Aurora certifies that is not aware of the existence of any related cases as that term is defined in L.R. 28-2.6.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2014, I electronically filed the foregoing Answering Brief of Aurora Loan Services LLC with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: February 13, 2014

By: */s/ Lisa J. Blaylock*
       Lisa Blaylock