Docket No. 13-55737

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VU NGUYEN,

*Plaintiff - Appellant,*

v.

AURORA LOAN SERVICES,

*Defendant - Appellee.*

## APPELLANT'S REPLY BRIEF

APPEAL FROM THE U.S. DISTRICT COURT
For the Central District of California, Los Angeles
Case No. EDCV 12-00098-GW (DTBx) The Honorable George Wu, Presiding

Lenore L. Albert, Esq. SBN 210876
Law Offices of Lenore Albert
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Ph: 714-372-2264  Fx: 419-831-3376
Email: lenalbert@interactivecounsel.com
*Counsel for Plaintiff – Appellant, Vu Nguyen*

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................1

II.  FURTHER ARGUMENT ...........................................................1

    A. F.R.A.P. was Amended Effective December 1, 2013
       Combining the Facts and Procedure into the Statement of the
       Case Section ......................................................................1

    B. Aurora Accepted each Payment and Applied them to Nguyen's
       Loan as Described in the Work Out Agreement Instead of
       Immediately Applying the Payments to the Underlying Loan So
       Aurora is Barred from Repudiating the Agreement on the
       Grounds the Payments were Late.......................................4

    C. Promissory Estoppel...........................................................8

    D. Failure to Promptly and Accurately Credit the Borrower's
       Payments was a Violation Prior to the Enactment of 15 USC
       §1639f.................................................................................8

    E. The UCL is not Preemption under HOLA ........................11

    F. A Genuine Issue of Material Fact Existed .........................15

       1.  HOLA.........................................................................16

       2.  Suspense Account .....................................................18

       3.  MERS........................................................................18

III.  CONCLUSION.........................................................................22

IV.  Statement of Related Cases .................................................24

V.  Certificate of Compliance....................................................25

VI.  Certificate of Service ..........................................................26

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*California v. ARC Am. Corp.* (1989) 490 U.S. 93 [109 S.Ct. 1661, 104 L.Ed.2d 86] .............................................................. 13

*Graham v. White-Phillips Co.* (1935) 296 U.S. 27 ................................................................ 22

*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470 [116 S.Ct. 2240, 135 L.Ed.2d 700] ............. 13

*West v. American Telephone & Telegraph Co.* (1940) 311 U.S. 223 ............................... 22

**Ninth Circuit Opinions**

*Columbia Steel Casting Co. v. Portland GE* (9th Cir. 1996) 111 F.3d 1427 ........................ 3

*Lester v. J.P. Morgan Chase Bank* (N.D.Cal. 2013) 926 F.Supp.2d 1081 ........................ 21

*Miller v. Wells Fargo Bank* (N.D.Cal. May 30, 2012), No. C-12-2282 EMC, 2012 U.S. Dist. LEXIS 74966, 2012 WL 1945498 ....................... 20

*Ohlendorf v. Am. Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575 ................ 20

**Fifth Circuit Opinions**

*Ronemus v. FTB Mortg. Servs.* (Bankr.N.D.Tex. 1996) 201 B.R. 458 ........................ 9

**United States Code**

15 U.S.C. section 1639f ....................................... 8, 9

**California State Opinions**

*Black v. Fin. Freedom Senior Funding Corp.* (2001) 92 Cal.App.4th 917 ................ 13

*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th
943 ................................................................................ 13

*Glaski v. Bank of Am., Nat'l Ass'n* (2013)
218 Cal.App.4th 1079 [160
Cal.Rptr.3d 449] ................................................ 20, 21

*Gomes v. Countrywide Home Loans, Inc.*
(2011) 192 Cal.App.4th 1149 [121
Cal.Rptr.3d 819] ......................................................... 21

*Lueras v. BAC Home Loans Servicing, LP*
(2013) 221 Cal.App.4th 49 ........................................... 3

*Pro Value Props., Inc. v. Quality Loan Serv.
Corp.* (2009) 170 Cal.App.4th 579
[88 Cal.Rptr.3d
381] ........................................................................ 20

*Washington Mutual Bank v. Superior Court*
(1999) 75 Cal.App.4th 773 .......................................... 13

*West v. JP Morgan Chase* (2013) 214
Cal.App.4th 780 ........................................................... 3

## California State Statutes

Civ. Code, section 2934a ................................................... 20
Civ. Code, section 2934a(a)(1) ................................... 19, 20

## Rules

Fed. Rules of App.Proc., rule 32(a)(7)(B)(iii) ................... 25
Fed. Rules of Civ.Proc., rule 32(a)(5) ............................... 25

## Other

76 Fed. Reg. 43,557 [internal quotation marks omitted] ...................................... 16
76 Fed. Reg. 43557 ........................................................ 14

# I.    INTRODUCTION

HOLA cannot "preempt" other federal law.  HOLA does not preempt state real property recording laws. Consequently, even if HOLA applied (and it does not) there was nothing to preempt in this case.

Second, Aurora refused to turn over its payment history showing the credits and allocation of payments of Mr. Nguyen's payments on his loan from 2006 through 2009 so there is no possible way a court could conclude that Aurora correctly and promptly applied all of Nguyen's payments to his loan.

Finally, there was no procedural error that would warrant affirming on appeal. F.R.A.P. 28 was amended on December 1, 2013 so Appellant followed the new rule in constructing his opening brief.

# II.    FURTHER ARGUMENT

## A. F.R.A.P. 28 WAS AMENDED EFFECTIVE DECEMBER 1, 2013 COMBINING THE FACTS AND PROCEDURE INTO THE STATEMENT OF THE CASE SECTION

Defendants contend that the appeal fails because "Nguyen's Opening Brief does not comply with Rule 28 [because] Not only does it not even have a "Statement of the Facts" section, but "Statement of the Case" largely cites to the SAC and not to pages in the appendix as Rule 28(e) requires." [AB 17]

On December 1, 2013 F.R.A.P. 28(a)(6) was amended as follows:

a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e))

Since Plaintiff's Opening Brief was filed on December 6, 2013, Appellant complied with the new format of F.R.A.P. 28(a)(6).

Next, Defendants' contend that the record was not properly cited to as described in F.R.A.P. 28(e). (AB 17) That section states:

**References to the Record.** References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:
 • Answer p. 7;
 • Motion for Judgment p. 2;
 • Transcript p. 231.

Only clear abbreviations may be used. A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

The Ninth Circuit uses Excerpts of Record, which were designated in the Opening brief as "EOR".  In order to assist the court, Appellant also cited to the allegations in the Second Amended Complaint by paragraph. As such, some citations to the record "[SAC ¶31-40] (EOR 3:354-56) *See, e.g*. OB 4.

2

The fact that Appellant added reference to the relevant paragraphs in the Second Amended Complaint does not make the brief noncompliant because Appellant also referred to the page number and volume number that those references could be found in the Excerpts. The appellate does not have to 'comb through the record' to find the applicable pages.

Third, defendant contends that "new legal theories" are being "espoused" for the first time on appeal so they are 'waived.'  Presumably the defendant is referring to imputing HAMP guidelines when reviewing the Special Forbearance "Workout" Agreement that Aurora gave the plaintiff in this case.

Both, *West v. JP Morgan Chase* (2013) 214 Cal.App.4th 780,  and *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, were both decided after the trial already dismissed the claim with prejudice and without leave to amend. [EOR 1:45]

Even if the cases were already decided and the case was tried in a vacuum where HAMP was completely ignored, defendants agree that this is a pure issue of law. (AB 18).  Such issues are properly brought to the appellate panel's attention for the first time on appeal because they are pure issues of law. (*Columbia Steel Casting Co. v. Portland GE* (9th Cir. 1996) 111 F.3d 1427, 1443.)

Finally, defendants contend that there were no allegations that "Aurora violated the UCL for payments made prior to March 2010, nor does it allege

3

violations of the UCL for falsifying or forging of recorded documents, or MER's ability to execute documents although not licensed in California. (See Aplt. E.R. at 3:372-78)." (AB 18).  Plaintiff Vu Nguyen provided proof of his payments which were not being properly credited to his loan prior to his default from 2006 forward in his declaration in opposition to the motion for summary judgment. (EOR 2:160-164; proof of credits EOR 2:167-220) Second, Appellant alleged Aurora was using "robosigning" and "surrogate signing" of the documents being recorded in the Los Angeles County Recorder's Office. (EOR 3:375-76). Third, Appellant also alleged that Aurora's use of MERS violated various statutes of the California Penal Code. (EOR 3:375-76)

Consequently, the appeal should not fail on purported procedural grounds.

**B.  AURORA ACCEPTED EACH PAYMENT AND APPLIED THEM TO NGUYEN'S LOAN AS DESCRIBED IN THE WORK OUT AGREEMENT INSTEAD OF IMMEDIATELY APPLYING THE PAYMENTS TO THE UNDERLYING LOAN SO AURORA IS BARRED FROM REPUDIATING THE AGREEMENT ON THE GROUNDS THE PAYMENTS WERE LATE**

Aurora basically contends that it did not breach the duty of good faith and fair dealing on the grounds the borrower's payments under the Workout Agreement were late. (AB 20)

4

Unlike Mr. Nguyen's loan, the Work Out Agreement conditioned applying the payments under the agreement to the loan only after enough money was collected to make a full payment. (EOR 3:303-04, 3:361, 3:386 ) (AB 28)

As such, Aurora is barred, estopped or has otherwise waived their requirement of a payment prior to March 15, 2010 in order to invoke the Work Out Agreement.

Next, Aurora attempts to distinguish Lueras v BAC Home Loans, LP.  It is true that Lueras dealt with a FannieMae HomeSaver plan, however it was another form of a forbearance agreement. Moreover, the court distinguished *West* from *Lueras* on the ground *West* dealt with a TPP plan under HAMP. There the court found a loan modification was mandatory.

In *Lueras*, on the other hand, the FannieMae plan used the word "should" which did not make a loan modification mandatory. "[A]lthough Bank of America had no contractual duty to offer Lueras a loan modification or an alternative to foreclosure, it had a contractual duty to work with him to identify the feasibility of, and implement, a foreclosure prevention alternative, and to do so in good faith." *Lueras* at 75-76.

Since, this was the first time a court had visited this issue, the court of appeal reversed the trial court, ordering the trial court to grant leave to amend.

5

Here, the key language is found on the last page of Exhibit A of the Work Out agreement which stated "Customer must cure the Arrearage through a full reinstatement, payment in full, loan modification agreement or other loan workout option that Lender may offer (individually and collectively, a "Cure Method.") (EOR 3:389)

Like Lueras, although Aurora had no contractual duty to offer Nguyen a loan modification or an alternative to foreclosure, it had a contractual duty to work with him to identify the feasibility of, and implement, a foreclosure prevention alternative (a loan work out option or "Cure Method"), and to do so in good faith.

West found similar good faith covenants in the HAMP directives as well.

Finally, defendants characterize the Work Out Agreement as a foreclosure sale delay plan. However, the record shows that the plan was issued on February 24, 2010. (EOR 3:381).  The Notice of Default prior to entering the Work Out Agreement. The Notice of Default was recorded almost one year later. (EOR 3:358) The first amount due was only $1,368.50 as being late. (EOR 3:358).  The second recorded notice stated $21,727.36 was owed. This still would have been a default after the workout agreement. (EOR 3:359). Hence, the argument it was a foreclosure sale delay plan is specious on the grounds there is no evidence in the record that Mr. Nguyen was already facing foreclosure when he entered the Work Out plan.  In fact, Mr. Nguyen had already paid on a TPP and received a

6

permanent modification under HAMP in 2009. (EOR 2:307-09). Mr. Nguyen was told he would receive the same modification after exiting his Chapter 7 bankruptcy and completing the Work Out Agreement payments. Mr. Nguyen's view is more consistent with the view of the California appellate courts in Lueras and West.

In fact, the entire last paragraph of the Work Out Agreement would be entirely superfluous if this were merely a foreclosure sale delay plan. There would be no need for it at all. As such, in order to give it some meaning to give legal effect to the agreement, the court should read a duty of good faith and fair dealing which required Aurora to work with Nguyen to identify the feasibility of, and implement, a foreclosure prevention alternative (a loan work out option or "Cure Method"), and to do so in good faith.

Defendants contend that HAMP Guidelines do not cover forbearance plans. However, plaintiff was first in a HAMP TPP Plan and did receive temporarily a permanent modification.

Second, Section 4 and Section 5 of the Making Home Affordable Guidelines V 4.2 deal with forbearance plans. MHA states that forbearance plans should be given to those who are unemployed. Then after the plan ends or the person becomes employed, a HAMP application should be given to the borrower to apply for a HAMP modification under either tier 1 or tier 2 of the program.

So Aurora's position is overbroad.

7

Aurora gives no reason why it should not be held liable for failing to act in good faith with regard to the last paragraph of the Work Out Agreement.

Thus, the district court's dismissal should be reversed.

## C. PROMISSORY ESTOPPEL

Aurora attempts to characterize the Work Out agreement as a corporate in-house agreement. However, that is not in the record.

Mr. Nguyen received a letter in May 2010 congratulating him and encouraging him to continue making payments because his loan was still being reviewed for a loan modification. (SER 1-20) As such, the fact that not a single was purportedly timely (in a case where Mr. Nguyen alleges Aurora failed to timely credit his payments) is immaterial. The later letter clearly shows Aurora waived that requirement. *Lueras* at 71.

## D. FAILURE TO PROMPTLY AND ACCURATELY CREDIT THE BORROWER'S PAYMENTS WAS A VIOLATION PRIOR TO THE ENACTMENT OF 15 USC §1639F.

Aurora contends that 15 United States Code section 1639f was not enacted so there is no liability and even if it were, there was no evidence in the record to show any payments were misapplied.

8

In *Ronemus v. FTB Mortg. Servs.* (Bankr.N.D.Tex. 1996) 201 B.R. 458, the court noted that delays in promptly and accurately crediting all payments made are violations:

> FTB's witness stated that it placed payments received from the Chapter 13 Trustee in a "suspense" account until they equaled a regular Note payment, at which time it applied them on the loan. She stated that their computer program required this procedure. FTB's attempt to evade its obligation to promptly apply those payments by blaming its actions on a computer cannot be tolerated. The computer program could and should have been adjusted. Further, FTB offered no reconciliation of the monies placed in suspense. From the evidence presented, the court cannot determine if all payments made by the Debtors and by the Chapter 13 Trustee were properly accounted for and properly applied to the Debtors' note.

In 2008, The Board published final rules amending Regulation Z, which implemented the Truth in Lending Act and Home Ownership and Equity Protection Act. Part of that act encompassed this rule which was based on cases such as *Rominus, infra*, that stretches back to the mid-1990s.

Consequently, when 15 United States Code section 1639f was enacted is irrelevant. It was merely a restatement of already existing law.

As for the evidence, Mr. Nguyen proffered his declaration with a copy of his bank statements showing when the payments posted. (EOR 2:162-220). The dates of the checks do not match up with the dates posted. (EOR 2:298-305). Aurora refused to give a complete payment history, so that should have worked against them when they had the superior evidence and refused to provide it.

9

For example, the first Work out payment is for $1,557.73. Aurora places that amount in "suspense." (EOR 304). Aurora holds onto that money for one month until they receive the next $1,557.73 scheduled plan payment and then credit the principal and interest $998,63 and $615.01 respectively. (EOR 304). This now places $1,501.82 in the Suspense account (monies collected but not being applied to the loan's principal or interest). The following month when another $1,557.73 is collected, another $1,613.64 is moved out of the suspense account and applied to principal and interest and $1,445.91 is put into Suspense. In effect, almost one whole mortgage payment is never credited to the loan, sitting in suspense. This creates an overcharge to the borrower where there is added interest, increasing principal on a negatively amortizing loan and other charges. Because holding the fund is not lawful, it is not something that a party contract.

The harm of never promptly and properly crediting the payments made from 2006 through 2010 included added interest, unnecessary charges and fees, default related fees, additional credit damage and ultimately it was a substantial factor in foreclosure. (SUR x)

This court should come to the same conclusion, and on that basis find there is a genuine issue of material fact that exists.

10

Defendants accounting must be questioned. The only way to reconcile the account is to provide the court with the entire loan history. Here, defendants have concealed three years of the payment of history and were successfully able to object to providing it below. This was an interlocutory order that created the ultimate error in not being able to reconcile all of Mr.Nguyen's payments with how Aurora applied those payment because Aurora was not required to provide the complete history it had.

### E.  THE UCL IS NOT PREEMPTED UNDER HOLA

First Aurora cites the rule correctly with regard to failing to raise an affirmative defense. (AB 32) However, Aurora's conclusion that sandbagging the plaintiff was not prejudicial is amiss.  Raising preemption for the first time on motion for summary judgment was prejudicial.  The fact that the court allowed plaintiff to brief the issue of preemption after Aurora raised it in their REPLY brief in the motion for summary judgment did not cure the prejudice.   Aurora never explained why it did not raise it during the motion to dismiss stage. If it had raised it at that stage, Plaintiff could take their entire case to the Ninth Circuit including the wrongful foreclosure claim and breach of agreement claim.  Instead, plaintiff waived that right in reliance that such a dispositive motion would not be forthcoming and that there were other claims that could potentially bring plaintiff the same type of relief as those waived.  As such, their preemption argument

11

should have failed in the first instance and the district court erred warranting reversal.

Second, the premise that HOLA preempts the UCL claims is incorrect. Aurora contends that the integration of the OTS with the OCC which occurred on June 21, 2010 did not do away with HOLA preemption. (AB 36). First, from a common sense standpoint this result is illogical. The supervising board over HOLA is gone – erased - deleted. Yet, the banks who are no longer federal savings banks, want HOLA preemption to be applied by the courts for banking institutions that no longer exists and are no longer supervised by a board that was subsumed by the OCC.

Aurora's fallback position before the district court was that all loans that were originated before 2010 must have HOLA apply to them. HOLA was not solely about loan origination. The entire purpose of HOLA was to give a floor of minimum operating safety standards and to preserve home ownership during the Great Depression.

> Under the supremacy clause of the United States Constitution (art. VI, cl.2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. In determining whether federal law preempts state law, a court's task is to discern congressional intent. Congress's express intent in this regard will be found when Congress explicitly states that it is preempting state authority. Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law; (ii) when compliance with both federal and

12

state regulations is an impossibility; or (iii) when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 955.)

The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption. When Congress legislates in a field traditionally occupied by the States, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. *Bronco Wine Co. v. Jolly*, *supra*, 33 Cal.4th at pages 956-57, citations and internal quotes omitted.

> Laws concerning consumer protection, including laws prohibiting false advertising and unfair business practices, are included within the states' police power, and are thus subject to this heightened presumption against preemption."

*(Black v. Fin. Freedom Senior Funding Corp.* (2001) 92 Cal.App.4th 917, 926.)

"[T]his presumption against preemption applies not only to state substantive requirements, but also to state causes of action." (*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 485 [116 S.Ct. 2240, 135 L.Ed.2d 700].)

As noted in *California v. ARC Am. Corp.* (1989) 490 U.S. 93, 105 [109 S.Ct. 1661, 104 L.Ed.2d 86], there is no 'federal policy against States imposing liability in addition to that imposed by federal law.' *Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 782.

Aurora gets to the operative language on page 39 of their brief where the Appellant parts ways with the district court. The Final Rule states that "future preemption determinations would be subject to the new Dodd-Frank Act procedural provisions." (AB 39) 76 Federal Register 43557.

There is no carve out for loans that were originate before the Act. The only carve out exception is those cases where there was a prior determination as to the issue of preemption. There had been no prior determination as to preemption in this case until the district court ruled in 2012. Furthermore, Aurora was supposed to go to the OCC and request a ruling if it felt that its actions should be shielded with this amorphous field preemption standard.

If not, then the US Supreme Court standard of conflict preemption was the proper standard to use as laid out in Barnett v Bank of Marion County, N.A. 51 U.S. 25 (1996).

To consider this a retroactive application of the law is a misnomer. Legal standards are employed when enacted all of the time. For example, the HBOR is effective against servicers who dual track even though the loan was originated before January 1, 2013. Congress made it clear that the trigger was when a preemption determination was being made. If it wanted to exclude all loans originated before the enactment of the Dodd Frank Act, Congress could have said

14

so, but it did not. The fact that other loan servicers are able to get the district courts to side with the financial institutions on this issue only exemplifies the importance of this issue to be decided by the Ninth Circuit.

Using defendant's standards, *Corvello v Wells Fargo*, *Wigod v Wells Fargo* and other emerging cases from the circuits would all be preempted if the loans originated with Wachovia. Considering all of the financial institutions now have to answer to the same agency and have to play by the same rules, so much so all of the federal savings banks changed from that status, why should they receive different treatment? Aurora never gives a cogent answer as to why they should receive different treatment.

### F.  A GENUINE ISSUE OF MATERIAL FACT EXISTED

The court never ruled on whether a genuine issue of material fact existed under the UCL claims. Instead, in supplemental briefing – after the first motion for summary judgment hearing Aurora raised for the first time the issue of preemption. The judge then ruled the claim was preempted. (EOR 1:13-20).

Consequently, if this court were to find that HOLA preemption does not apply, and it should, then the proper procedure would be to reverse to allow the court to consider whether a genuine issue of material fact existed on the UCL claim.

### i.    <u>HOLA</u>

15

Finally, even if HOLA did apply, and it did not, the court erred by finding preemption here. HOLA never divested a state of its property rights nor did it divest a state from protecting the welfare of its citizenry.

Holding Aurora responsible for fraudulent, unfair and deceptive acts would not be preempted under HOLA.

OTS enumerates certain types of state laws that are preempted, including "state laws purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). If the state law—"as applied"—is one of the enumerated types, "the analysis will end there; the law is preempted." *Silvas*, 514 F.3d at 1005. If it is not, then the court is to determine "whether the law affects lending." *76 Fed. Reg. 43,557 [internal quotation marks omitted]*. If it does, the law is presumed to be preempted, subject to the exceptions of section 560.2(c). *Id.* That section provides:

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. § 1462a(f);

16

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

Aurora using MERS to record robosigned and surrogate signed documents so that it can take a beneficial interest under the false pretense of title is not a lending, origination, or servicing function. California laws that protect against such uttering, passing off or forgery are laws aimed at protecting Real property. Thus, HOLA does not apply.

Second, as to the HAMP claims and failure to act in good faith and fair dealing, that is a contract type of claim. Although it does deal with servicing, there is no conflict with federal law because HAMP is a federal program. HOLA does not conflict with federal law and cannot preempt federal law. Such things are outside HOLA.

Finally, the failure to promptly and accurately credit the payments, once again, is a federal law. HOLA does not conflict with federal law and cannot preempt federal law. Such things are outside HOLA.

17

### i. **Suspense Account**:

As outlined above Nguyen proved there was an issue of material fact with regard to the Suspense account. Of course Nguyen could not perform an accounting because he was prevented from obtaining the account history from Aurora. However, Aurora cannot prevent the discovery then use the lack of that discovery as a basis to win on summary judgment.

### ii. **MERS**

A business that commits fraud or engages in conduct like this for unfettered profit at the expense of a homeowner (former) is redressible.

Plaintiff alleges that the defendants demanding payment and foreclosing were the party to do so.

Defendants were not authorized to initiate a nonjudicial foreclosure because the Substitution of Trustee document (which is part of the chain of documents Defendants believe gave them the right to foreclose) was fraudulent.

Specifically, Plaintiff alleges that the Substitution of Trustee document was signed by an agent or employee of the beneficiary. Homecomings Financial Network, Inc. was the true beneficiary.  There was no existing ADOT from Homecomings Financial Network, Inc. to MERS. MERS was merely a nominee of Homecomings, but had no capacity to act on behalf of Homecomings at the time

the NOD was recorded because Homecomings had already went out of business. (EOR 2:275)

Chicago Title Company was the original Trustee. (EOR 2:276). Yet a Notice of Default (NOD) was recorded by Quality Loan Services LLC in favor of Mortgage Electronic Systems, Inc. as Nominee for Homecomings Financial Network, Inc. on February 1, 2011 and executed by LSI Title Agency Inc. as agent for Quality Loan Services, LLC. (Aplee ER 115-117). On December 2, 2008 "Mary Jane Sarne" purporting to be Vice President of Mortgage Electronic Registration Systems, Inc. executed a Substitution of Trustee substituting in Quality Loan Services, LLC for Chicago Title. However, Mary Jane Sarne is an employee of Quality Loan Services, LLC and not MERS.

Quality Loan Services, LLC could not substitute itself in as trustee, only the beneficiaries can do that.

Quality had no authority to substitute in itself or have MERS substitute in Quality as the trustee. (Aplee ER 127-28)

"The trustee under a trust deed upon real property . . . may be substituted by the recording . . . of a substitution executed and acknowledged by . . . all of the beneficiaries under the trust deed or their successors in interest." Civil Code, section 2934a(a)(1) Here, the beneficiary listed on the original Note was Homecomings Financial Network, Inc. and MERS was the nominee. To comply

19

with Civil Code section 2934a(a)(1), Homecomings (or its agent) should have signed the Substitution of Trustee document as the beneficiary of the original Note. Instead, a Quality Loan Services, LLC signed the Substitution of Trustee document pretending to be MERS. Thus, Plaintiff made a colorable allegation that the substitution document was executed in violation of Civil Code section 2934a and as such, a viable UCL claim.

If a substitution of trustee is fraudulent, then a nonjudicial foreclosure sale based on that substitution is void. *See Pro Value Props., Inc. v. Quality Loan Serv. Corp.* (2009) 170 Cal.App.4th 579, 583 [88 Cal.Rptr.3d 381] (failure to comply with CIV. CODE § 2934A(A)(1) renders subsequent nonjudicial foreclosure sale void); *Miller v. Wells Fargo Bank* (N.D.Cal. May 30, 2012), No. C-12-2282 EMC, 2012 U.S. Dist. LEXIS 74966, 2012 WL 1945498, at *2, *4 (Chen, J.) (granting preliminary injunction preventing foreclosure sale because the plaintiff was likely to prevail on claim that foreclosure was improper due to fraudulent substitution of trustee); *Glaski v. Bank of Am., Nat'l Ass'n* (2013) 218 Cal.App.4th 1079, 1100 [160 Cal.Rptr.3d 449] (foreclosure sale is void if the foreclosing entity lacked the authority to foreclose on the property).

Courts have concluded that a plaintiff can state a wrongful foreclosure claim if the defendants were not proper parties to foreclose in the first place due to allegedly fraudulent assignments prior to the foreclosure sale. *See, e.g., Ohlendorf*

20

*v. Am. Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 582-583; *see also Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 [121 Cal.Rptr.3d 819] (allegation that wrong party initiated foreclosure places a case outside the bar against legal challenges to a foreclosing entity's right to carry out nonjudicial foreclose).

Even if the plaintiff was duped into forgoing the wrongful foreclosure claim, this is still viable under the UCL.

No tender applies because the sale was void. *See Glaski v. Bank of Am., Nat'l Ass'n*, *supra*, 218 Cal.App.4th at page 1100 ("Tender is not required where the foreclosure sale is void . . . , such as when a plaintiff proves that the entity lacked the authority to foreclose on the property."); *Lester v. J.P. Morgan Chase Bank* (N.D.Cal. 2013) 926 F.Supp.2d 1081, 1093 ("where a plaintiff alleges that the entity lacked authority to foreclose on the property, the foreclosure sale would be void . . . . The tender does not apply to a void . . . foreclosure sale.") (citations omitted)).

On February 26, 2014 the California Supreme Court rejected the defendants request to depublish *Glaski*. *Aspiras,* on the other hand, was depublished by the California Supreme Court in January.

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of

21

the state would decide otherwise. Six Companies of California v. Joint Highway District, ante, p. 180; Fidelity Union Trust Co. v. Field, ante, p. 169. Cf. (*Graham v. White-Phillips Co.* (1935) 296 U.S. 27; Wichita Royalty Co. v. City National Bank, supra, 107; Russell v. Todd, supra. This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."

*(West v. American Telephone & Telegraph Co.* (1940) 311 U.S. 223, 236-237.)

Second, the assignments were executed by Aurora purporting to assign an interest to Aurora. However California recording statutes read an assignment as one of "title" not of an "interest." As such, the practice is unfair. Aurora assigns the DOT to itself without taking "title" in order to avoid foreclosure fees and to give Aurora the ability to take by credit bid. The person this hurts is the borrower because it is the borrower who has the true name of his creditor obfuscated.

This gives him one less tool in attempting to modify his loan.

### III. CONCLUSION

For the reasons stated herein, this Court should reverse the district court's decision in dismissing this complaint by way of summary judgment and 12(b)(6); and award costs thereon.

Dated: February 27, 2014                 Respectfully Submitted,

                                                              LAW OFFICES OF LENORE ALBERT

*/s/ Lenore Albert*_____

*LENORE L. ALBERT, ESQ.*
*Counsel for Plaintiffs/Appellants*
*Vu Nguyen*

## STATEMENT OF RELATED CASES

Plaintiffs/Appellants are not aware of the following cases pending in this

Court that would be deemed related pursuant to Ninth Circuit Rule 28-2.6.

Dated:  February 27, 2014                    Respectfully Submitted,
                                             LAW OFFICES OF LENORE ALBERT


                                             */s/ Lenore Albert*_____

                                             *LENORE L. ALBERT, ESQ.*
                                             *Counsel for Plaintiff-Appellant, Vu Nguyen*

24

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with enlargement of brief size permitted by the Ninth Circuit Rule 28-4.  The brief's type size and type face comply with Federal Rules of Civil Procedure, rule 32(a)(5) and (6). This brief has 6,612 words not including this Certificate and excluding the portions exempted by the Federal Rules of Appellate Procedure, rule 32(a)(7)(B)(iii), if applicable.

Dated:  February 27, 2014          Respectfully Submitted,
                                   LAW OFFICES OF LENORE ALBERT


                                   */s/ Lenore Albert*_____
                                   *LENORE L. ALBERT, Esq.*
                                   Counsel for Plaintiff – Appellant, Vu Nguyen

25

### PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA 92647.
On February 27, 2014, I served a copy of the following document(s) described as:

**APPELLANT'S REPLY BRIEF**

On the interested parties in this action as follows:
For Defendants Aurora Loan Services, LLC:
Victoria Edwards,  Amy Cizmorris & Justin D Balser
Akerman Senterfitt LLP
Justin.balser@akerman.com
Victoria.edwards@akerman.com
 **[X] BY CM/ECF –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

I hereby certify that the following participants were served by U.S. Mail  on (date) **February 27, 2014**.

Attorney General's Office:
Appellate Coordinator
Office of the Attorney General
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

The Hon. George Wu
US District Court
310 N. Spring Street, Crtm 10
Los Angeles, CA 90012-4701

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.
Dated: February 27, 2014

/s/ Lenore Albert_____
Lenore Albert

26